

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-16-2001

# USA v. Powell

Precedential or Non-Precedential:

Docket 00-2440

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"USA v. Powell" (2001). *2001 Decisions.* Paper 239.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/239

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 16, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2440

UNITED STATES OF AMERICA,

v.

ALLEN POWELL, a/k/a KEITH BATES

ALLEN POWELL,
      Appellant

Appeal from United States District Court
for the Eastern District of Pennsylvania
Docket No. 99-cr-00719
District Judge: Honorable Eduardo C. Robreno

Argued March 9, 2001

Before: BECKER, McKEE and STAPLETON, Circuit Judges

(Opinion Filed: October 16, 2001)

       Maureen Kearney Rowley, Esq.
       Chief Federal Defender
       David L. McColgin, Esq. (Argued)
       Elaine DeMasse, Esq.
       Assistant Federal Defender
       Supervising Appellate Attorney
       Federal Court Division
       Defender Association of Philadelphia
       Suite 540 West -- The Curtis Center
       Independence Square West
       Philadelphia, PA 19106
       Attorney for Appellant

Michael R. Stiles
United States Attorney
Walter S. Batty, Jr.
Assistant United States Attorney
Chief of Appeals
Kathleen M. Rice (Argued)
Assistant United States Attorney
Suite 1250 615 Chestnut Street
Philadelphia, Pennsylvania 19106
Attorney for Appellee

Mitchell E. Zamoff, Esq.
Hogan & Hartson
555 13th Street, N.W.
Washington, D.C. 20004-1109
Attorney for Appellee

OPINION OF THE COURT

McKEE, Circuit Judge:

Allen Powell appeals his sentence of 192 months of imprisonment followed by five years supervised release. He argues that the district court erred by not ruling on his pro se motion for a downward departure based upon conditions of confinement, and by imposing a period of supervised release that was longer than explained in his plea agreement and the change of plea colloquy.

For the reasons that follow, we will vacate the sentence and remand to the district court for clarification of its rationale for denying his motion for a downward departure. Our remand will also allow the district court to consider a concession regarding the supervised release that the government has made during the course of this appeal.

I. Background

On November 9, 1999, a grand jury charged Powell with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. S 922(g)(1). On December 15, 1999, the government filed a notice of prior convictions statement

pursuant to 18 U.S.C. S 1924(e).1  Thereafter, Powell entered into a written plea agreement. In that agreement, the government stipulated that his "offense level is 33, pursuant to U.S.S.G. Section 4B1.4, because he is an armed career criminal," and that Powell was eligible for a three-point downward departure for acceptance of responsibility pursuant to U.S.S.G. SS 3E1.1(a) & (b). App. at 129a-30a. The government also agreed to "[m]ake whatever sentencing recommendation as to imprisonment, fines, forfeiture, restitution and other matters which the government deems appropriate." Id. at 127a. The plea agreement also stated:

> [Powell] has the three prior convictions set forth in the Notice of Defendant's Prior Convictions for Enhanced Sentencing Under Title 18, United States Code, Section 924(e) filed by the government in this action. Therefore, the defendant understands, agrees and has had explained to him by counsel that the Court may impose the following maximum sentence; Life imprisonment-- with a 15-year mandatory minimum term of imprisonment -- a $250,000 fine, a three-year term of supervised release and a $100 special assessment. . .
>
> The defendant may not withdraw his plea because the Court declines to follow any recommendation, motion or stipulation by the parties to this agreement. No one has promised or guaranteed to the defendant what sentence the Court will impose.

Id. at 127-28 (emphasis added). The agreement further
_____

1. Section 924 is entitled "Penalties," and states:

> (e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years. . . .

18 U.S.C. S 924(e). Section 924(e), which does not expressly delineate a maximum term of imprisonment, has been construed to allow a life sentence. United States v. Mack, 229 F.3d 226, 229 n.4 (3d Cir. 2000) (citing Custis v. United States, 511 U.S. 485 (1994)).

provided that the stipulations did not bind the court and that the court could make determinations that might increase or decrease the applicable range under the Sentencing Guidelines, and thereby affect Powell's sentence.

At the ensuing change of plea hearing, the court asked the government to state the maximum penalty. The prosecutor responded as follows:

> The maximum penalties are life imprisonment, a $250,000.00 fine, a three-year term of supervised release and a $100.00 special assessment. There is a fifteen-year mandatory minimum prison sentence, which is applicable to this case.
>
> THE COURT: Mr. Powell, do you understand the maximum penalty to be just as stated by the Assistant United States Attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Has your attorney discussed with you the sentencing guidelines?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand, the Court will not be able to determine how the sentencing guidelines will be applied in your case, until after the presentence investigation report is completed and you and the Government have had an opportunity to challenge the facts reported by the Probation Officer?
>
> DEFENDANT: Yes.
>
> ***
> ***
>
> THE COURT: Do you understand that the Court could in appropriate circumstances, impose a sentence which is more severe than the sentence, which the guidelines recommend?
>
> DEFENDANT: Yes.
>
> THE COURT: Do you understand that if you are sent to prison, a term of supervised release may be imposed when you are released from prison?

4

        DEFENDANT: Yes.

Id. 40a – 42a (emphasis added). The court accepted the
guilty plea and ordered a Pre-sentence Investigation.

Thereafter, while in custody awaiting sentencing, Powell
sent a letter to the district court complaining of what he
characterized as substandard conditions at the Hudson
County Jail in New Jersey where he was being detained
pending sentencing. He attached a list of those conditions,
and argued that the conditions entitled him to a downward
departure pursuant to United States v. Brinton , 139 F.3d
718 (9th Cir. 1998).

The Presentence Report that the court subsequently
received stated that the maximum sentence was "life
imprisonment, with a mandatory minimum of 15 years,
pursuant to 18 U.S.C. S 924(e)." PSI atP 50. The sentencing
range in the report was calculated between 180 to 210
months of imprisonment.2 The PSI also stated "[i]f a term of
imprisonment is imposed, the Court may impose a term of
supervised release of not more than five years , pursuant to
18 U.S.C. S 3583(b)(1)." PSI at P 53 (emphasis added).

Defense counsel objected to the recommendations in the
PSI based upon the Supreme Court's decision in Apprendi
v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000). He
argued that Powell should not be subjected to sentencing
enhancements under 18 U.S.C. S 924(e) and U.S.S.G.
S 4B1.4(b)(3)(B) because the indictment failed to allege the
predicate convictions for those enhancements. Even though
Powell had previously been informed that the maximum
supervised release that could be imposed was three years,
he neither questioned nor objected to the report's statement
that the maximum term was five years.

The district court concluded that the applicable
sentencing range under the guidelines was 180 to 210
months followed by a period of supervised release of three

_____

2. The PSI stated "based on a total offense level of 30 and a criminal
history category of VI, the guideline range for imprisonment is 168 to
210 months. However, since the mandatory minimum term of
imprisonment is 180 months, the effective guideline range is 180 to
210 months." PSI at P 51 (emphasis in original).

                                5

to five years. Powell did not object. The court interpreted Powell's letter about the conditions at the Hudson County facility as a pro se motion for a downward departure based on the substandard conditions of his presentence detention. App. at 48a.

The court rejected Powell's Apprendi claim, and sentenced Powell to 192 months of imprisonment (16 years) plus a five-year term of supervised release. The court imposed that sentence without ever formally ruling upon Powell's motion for a downward departure based upon the conditions of his presentence detention. This appeal followed.

II. Jurisdiction, Issues & Standards of Review

The district court had jurisdiction pursuant to 18 U.S.C. S 3231. We have appellate jurisdiction under 18 U.S.C. S 3742, and 28 U.S.C. S 1291. We must decide if the district court erred in failing to address Powell's request for a downward departure based on substandard conditions of confinement. "We review the district court's decisions concerning departures from the Sentencing Guidelines for abuse of discretion." United States v. Abuhouran, 161 F.3d 206, 209 (3d Cir. 1998). However, when reviewing legal questions regarding the application of the guidelines, "we need not defer to the district court's conclusion, and we will review its holding for legal error." Id. Here, however, we do not know why the district court rejected Powell's request for a downward departure. The court merely announced that it would treat Powell's letter as a pro se motion for a departure, but sentenced Powell without departing from the applicable guideline range, and without explicitly ruling on Powell's pro se motion. For the purposes of this appeal, we will assume that the court's sentence to the suggested guideline range constituted an implicit denial of Powell's motion for a downward departure. In United States v. Mummert we explained our jurisdiction to review a district court's denial of a motion for departure. We stated:

> [I]f the ruling was based on the district court's belief that a departure was legally impermissible, we have jurisdiction to determine whether the district court's

> understanding of the law was correct. By contrast, if
> the district court's ruling was based on an exercise of
> discretion, we lack jurisdiction [under United States v.
> Denardi, 892 F.2d 269, 271–72 (1989)].

United States v. Mummert, 34 F.3d 201, 205 (3d Cir. 1994).

We must also determine if Powell's guilty plea agreement
included an understanding as to the supervised release he
was exposed to and if so, whether he is entitled to specific
performance of that portion of his plea agreement. 3 We
review that claim for harmless error. Fed.R.Crim.P.11(h);4
United States v. Electrodyne Systems Corp., 147 F.3d 250,
252 (3d Cir. 1998). Our review of whether the government
violated the terms of the plea agreement is plenary as it is
a question of law, and there is no factual dispute. United
States v. Moscahlaidis, 868 F.3d 1357, 1360 (3d Cir. 1989).

III. Discussion

A. Powell's Pro Se Downward Departure Motion

Inasmuch as the district sentenced Powell without ruling
on his request for a downward departure, we have no way
of knowing why the district court denied the requested
departure. As noted above, under United States v. Denardi,
892 F.2d 269, 271–72 (3rd Cir. 1989), if the court chose to
do so as an exercise of discretion, we have no jurisdiction
to review its decision. The government concedes that under
United States v. Mummert, this matter should be remanded
to afford the district court an opportunity to explain its
refusal to grant Powell's pro se motion. In Mummert, as
here, the defendant appealed the district court's failure to
grant a requested downward departure following a guilty

_____

3. In the alternative, Powell argues that he should be allowed to
withdraw his guilty plea.

4. Federal Rule of Criminal Procedure 11(h) provides:

> (h) Harmless Error. Any variance from the procedures required by
> this rule which does not effect substantial rights shall be
> disregarded.

Fed. R. Crim. P. 11(h).

7

plea. The district court had not given any explanation for denying Mummert's request. We remanded stating:

> in cases such as this, where the record does not make clear whether the district court's denial of departure was based on legal or discretionary grounds, we believe that the appropriate course of action is to vacate the sentence and remand for the district court to clarify the basis for its ruling.

34 F.3d at 205.

Accordingly, we will remand so that the district court can clarify its rejection of Powell's motion for a downward departure.

B. Powell's Sentence

Powell's supervised release presents a more difficult question. Powell contends that he is entitled to specific performance of the plea agreement or, in the alternative, withdrawal of his guilty plea. As noted above, Powell's written plea agreement expressly stated that the court could not impose more than three years of supervised release. Similarly, the Assistant United States Attorney informed Powell that he was not exposed to more than three years of supervised release at the Rule 11 change of plea hearing, and that statement was never corrected by the court. However, Powell's sentence included a five year term of supervised release as allowed under 18 U.S.C. S 924. Powell therefore argues that he did not voluntarily and intelligently change his plea, and that the government breached its "promise" that he would not be exposed to more than three years of supervised release. We will address each argument in turn.5

_____

5. Powell also argues that we should vacate his sentence based on our decision in United States v. Gilchrist, 130 F.2d 1141, 1133 (3d Cir. 1997), where we vacated the defendant's sentence because the district court caused a breach of the defendant's guilty plea agreement. There, however, the parties entered into a guilty plea agreement pursuant to Rule 11(e)(1)(C), which is binding on the court once accepted. Because there is no indication in the record before us that the parties entered into the guilty plea agreement here pursuant to Rule 11(e)(1)(C), we find that this assertion is without merit, and need not be addressed.

8

1. Whether Powell Entered the Plea Voluntarily
and Intelligently

Fed. R. Crim. P. 11 was formulated to ensure that a
defendant's guilty plea represents a voluntary and
intelligent decision to waive fundamental protections. See
North Carolina v. Alford, 400 U.S. 25, 30 (1970); McCarthy
v. United States, 394 U.S.459, 465 (1969). Accordingly,
under Fed. R. Crim.P. 11(c) "[b]efore accepting a plea of
guilty . . . the court must address the defendant personally
in open court and inform the defendant of, and determine
that the defendant understands . . . the maximum possible
penalty provided by law, including the effect of any. . .
supervised release term." It is undisputed that Powell was
misinformed about the length of supervised release that he
could receive.

Nevertheless, not all Rule 11 errors invalidate a guilty
plea. Fed. R. Crim. P. 11(h), entitled "Harmless Error,"
provides that "[a]ny variance from the procedures required
by [Rule 11] which does not affect substantial rights shall
be disregarded." Accordingly, we must determine if the
misinformation here affected Powell's substantial rights.

Every circuit court of appeals that has considered a case
involving a defendant who is misinformed as to the
maximum term of supervised release, but who receives a
sentence with a combined term of imprisonment and
supervised release that is less than the maximum possible
penalty has concluded that the misinformation constituted
harmless error. See United States v. Raineri, 42 F.3d 36
(1st Cir. 1994); United States v. Andrades, 179 F. 3d 131
(2d Cir. 1999); United States v. Gracia, 983 F.2d 625 (5th
Cir. 1993); United States v. Fuentes-Mendoza, 56 F.3d 1113

_____

Similarly, we need not address Powell's Apprendi  claim. Powell's
sentence was enhanced based upon prior convictions that he conceded
in his plea agreement. Accordingly, Apprendi does not apply. See
Apprendi, 120 S.Ct. at 2362-63 ("other than the fact of a prior
conviction,
any fact that increases the penalty for a crime beyond the statutory
maximum must be submitted to a jury and proved beyond a reasonable
doubt.") (emphasis added).

9

(9th Cir. 1995); United States v. Barry, 895 F.2d 702 (10th Cir. 1990).

Perhaps because of this seemingly uniform approach, the government urges us to adopt a blanket rule that"a failure to explain a supervised release term at a Rule 11 hearing is harmless error if the term of incarceration imposed, combined with the term of supervised release imposed, is less than the maximum sentence [the defendant was aware of]." Government's br. at 15. However, we do not think that a blanket rule is appropriate.

In United States v. Cleary, 46 F.3d 307, 311 (3d Cir. 1995), we held that a habeas petitioner under 28 U.S.C. S 2255, must show prejudice to obtain collateral relief for a Rule 11 violation. There, the sentencing court failed to explain the "effects of special parole, including the consequences of a violation, and that special parole is different from and in addition to regular parole." Id. at 310. We held: "[n]ot only must Cleary demonstrate an error of constitutional magnitude, but he also must show that he was prejudiced by that error, i.e., that he did not understand the consequences of his plea or that, if he had been properly advised about the effect of special parole, he would not have pled guilty." Id. We found that the failure there "did not rise to that level." Id.

However, we have not previously addressed this precise question on direct appeal. The government rests its argument for a bright line rule in part upon United States v. Electrodyne Systems Corp., 147 F.3d 250 (3d Cir. 1998). There, the district court erred in advising the defendant of the correct statutory fine for the offense charged in one of the counts to which the defendant pled guilty. Id. at 252. The court did, however, correctly advise the defendant of the maximum fine that could be imposed on the remaining count. The total fine that the court ultimately imposed was less than the stated total maximum on both counts. On direct appeal, we held that the court's error as to the amount of the fine on one count was harmless. We concluded that, "when all is said and done, the immutable fact is . . . Defendant was fined . . . an amount below the exposure about which it was informed." Id. at 253.

10

Nevertheless, though the analysis in Electrodyne  is certainly relevant to our inquiry here, the case is distinguishable from the instant case because the defendant there was misinformed about a fine. Supervised release "is a deprivation of some portion of one's liberty imposed as a punitive measure for a bad act." United States v. Dozier, 119 F.3d 239, 242 (3d Cir. 1997)."A defendant on supervised release is subject to various terms and conditions which restrict his freedom and which make him vulnerable to further punishment should he violate them. Such subsequent punishment may again include more imprisonment and more supervised release." Id. We cannot assume that misinformation about a possible deprivation of liberty is equivalent to misinformation about a monetary penalty.

The government also relies on our decision in United States v. Mustafa, 238 F. 3d 485 (3d Cir. 2001), where we also addressed errors in a Rule 11 colloquy in the context of a direct appeal. One of the arguments that we rejected in Mustafa is relevant to the government's position here. Mustafa argued that the sentencing court erred in not inquiring into promises that had been made in relation to the change of plea. After reviewing the record we concluded that "the only reasonable conclusion that this record supports is that Mustafa had been advised of counsel's best estimate of what the court would actually impose, and Mustafa was interpreting counsel's estimate as a`promise' as to the sentence he was going to receive." Id. at 491–92. We noted:

> Mustafa said absolutely nothing after his attorney informed the court of guidelines discussions, and he never said anything to suggest that his affirmative response about other promises was anything more than a reference to `assurances' he had received from his attorney as to what sentence would most likely be imposed.

> Mustafa was told that the total maximum sentence was 830 years of imprisonment. The sentence of imprisonment he received, though substantial (135 months), was far less than the maximum that he was aware of. Moreover, any alleged misrepresentations

11

> that Mustafa's former counsel may have made
> regarding sentencing calculations were dispelled when
> Mustafa was informed in open court that there were no
> guarantees as to sentence, and that the court could
> sentence him to the maximum. Thus, we conclude that
> Mustafa's answering `yes' to the court's inquiry about
> promises is not grounds to invalidate his plea.

Id. Immediately thereafter, we stated the following in a
footnote:

> We recognize that the maximum sentence authorized
> by law is often so extraordinarily long that few
> defendants other than `career criminals' plead guilty
> with the expectation that the maximum sentence
> applies to them. However, all that the law requires is
> that the defendant be informed of his/her exposure in
> pleading guilty. The law does not require that a
> defendant be given a reasonably accurate `best guess'
> as to what his/her actual sentence will be; nor could it,
> given the vagaries and variables of each defendant's
> circumstances and offending behavior. See United
> States v. Cleary, 46 F.3d 307, 311 (3rd Cir. 1995).

Id. n.5.6

The government now argues that Mustafa creates a
blanket rule that Rule 11 error is harmless so long as the
defendant is not sentenced to a term longer than the
maximum he or she is advised of. Put another way, the
government is arguing that any such discrepancy could not
have affected Powell's decision to plead guilty because the
sentence imposed was within the range of possibilities a
defendant accepts when deciding whether to plead guilty.
We disagree. Such a bright line rule obfuscates its own
underlying rational, and Mustafa is not to the contrary.

_____

6. Mustafa also argued that the district court committed reversible error
in not informing him that restitution could be ordered as part of the
sentence in violation of Rule 11(c)(1). We noted that the government had
advised Mustafa "that he faced a fine of several million dollars but was
actually ordered to pay far less than that amount in restitution." Id. at
490 (emphasis in original). While recognizing that restitution is not the
same as a fine, we relied on Electrodyne and found the distinction
irrelevant in context of that specific Rule 11 error. Id. at 490.

12

Mustafa is distinguishable from the case at bar because here the government affirmatively misled Powell during the plea colloquy and in the guilty plea agreement as to the maximum supervised term he could receive. In contrast, Mustafa involved the defendant interpreting his own counsel's best estimate as a "promise" as to the sentence he would receive. We acknowledged that few defendants actually expect that they will receive the statutory maximum they have been informed of,7 but explained that the law does not require that the defendant be given an accurate guess of what his or her ultimate sentence will be.

Common sense suggests that a defendant's realistic expectation of the sentence he or she will receive will often include considerations of applicable ranges under the Sentencing Guidelines. However, the colloquy under Rule 11 occurs when a defendant first enters a guilty plea. This, in turn, will almost always occur before the sentencing court has an opportunity to review a Presentence Report. Accordingly, the court will not be in a position to know what the realistic sentencing range will be when the court explains the maximum range of sentences to the defendant at the Rule 11 hearing.

> While the Sentencing Guidelines certainly are a relevant consideration for defendants entering a plea of guilty, the district court at the time of the plea allocution frequently has too little information available to provide defendant with an accurate sentencing range. For example, probation department officials often have not scored or researched defendant's criminal history, and the court is unaware of upward or downward departure motions that the government or defense counsel may pursue. Both of these factors have significant impacts on Sentencing Guideline calculations.

_____

7. Several other circuit courts of appeals have also observed that a defendant might reasonably expect that he or she will not be sentenced to the statutory maximum. See United States v. Raineri, 42 F.3d at 42; United States v. Andrades, 169 F.3d at 134; United States v. Whyte, 3 F.3d 129, 130 (5th Cir. 1993).

13

Andrades, 169 F.3d at 134.

The court in Andrades, cited United States v. Raineri, in declaring: "we decline to adopt an inflexible rule" for resolving issues under Rule 11(h) Id. As we discuss below, Raineri provides for an individualized and flexible inquiry into determinations of harmless error under Rule 11(h). Nevertheless, despite its pronouncement that it was "declin[ing] to adopt an inflexible rule," the court in Andrades established what appears to be the kind of bright line inflexible rule urged upon us here. The court stated:

> We now join with those circuit courts of appeals holding that the error is harmless where the district court misinforms a defendant of the applicable supervised release term and the total sentence of imprisonment and supervised release actually imposed is less than that described during the plea allocution.

169 F.3d at 134.

We believe the court in Andrades was correct in stating its intent to reject a bright line rule based upon the reasoning in United States v. Raineri. First of all, we note that the Supreme Court has cautioned against taking errors committed during guilty plea proceedings lightly. See McCarthy v. United States, 394 U.S. 459 (1969). A bright line rule, while easy to apply, minimizes the importance of the inquiry that must be undertaken when examining an individual decision to waive fundamental constitutional guarantees as is the case when a defendant enters a guilty plea. Accordingly, "[a]s the Advisory Notes to the 1983 amendment to Rule 11 (adding subsection 11(h)) indicate, `it is still true, as the Supreme Court pointed out in McCarthy, that thoughtful and careful compliance with Rule 11 best serves the fair and efficient administration of criminal justice. . . .' " United States v. Barry, 895 F.2d 702, 705 (10th Cir. 1990). We believe the government's position here moves us away from thoughtful and careful compliance with Rule 11 and towards mechanical inquiries into violations of the Rule.

Moreover, the difficulty in establishing a bright line rule is evidenced by the varying approaches that courts of appeals have taken in attempting to define harmless error

14

under Rule 11.8 The practical difficulty of such an approach is exemplified in the thoughtful analysis of the Court of Appeals for the First Circuit in Raineri. There, the court provides the following hypothetical:

> imagine a defendant who is wrongly told at the Rule 11 hearing that the maximum penalty for his crime is five years when in fact the maximum penalty is 15 years. The defendant might fairly expect, given his own past history and limited role in the offense, that the maximum sentence (whatever it might be) would not be likely to be imposed. If he then pled guilty and thereafter received a five-year sentence, he might reasonably think that the misinformation had prejudiced him in a rather concrete way.

42 F.3d at 41 (1st Cir. 1994) (citing United States v. Whyte, 3 F.3d 129, 130 (5th Cir. 1993)).9 The defendant in this

---

8. See, e.g., United States v. Johnson, 1 F.3d 296, 302 (5th Cir. 1993) (en banc) (focusing on "whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty"); United States v. Goins, 51 F.3d 400, 402 (4th Cir. 1995) (same); United States v. Raineri, supra, (ascertaining whether the Rule 11 error led the defendant to reasonably expect a lesser sentence than he actually received); United States v. Andrades, supra, (refusing to adopt a rigid rule; United States v. Fuentes–Mendoza, 56 F.3d 1113, (9th Cir. 1995) (stating generally that error was harmless where the maximum term of restricted liberty that the defendant faced was less than the sentence he or she was informed of); United States v. Barry, supra, (determining whether the Rule 11 error had a "significant influence" on the defendant's decision to plead guilty); United States v. Syal, 963 F.2d 900, 906 (6th Cir. 1992) (stating that "[s]ubstantial rights may not be affected when a defendant is informed of the maximum penalty and that penalty markedly exceeds the penalty the defendant received, including the period of supervised release and any additional incarceration time that might result from violation of [the] supervised release condition").

9. The error in United States v. Whyte, was far more egregious than the error here. There, the defendant's written plea agreement informed him he "was subject to a minimum term of five years, and a maximum term of twenty years imprisonment, a minimum term of four years supervised release, and a fine of up to $2,000,000." Whyte, 3 F.3d at 129. The district court confirmed those ranges during the Rule 11 colloquy.

example might well be able to convince a reviewing court that the misinformation severely hampered his ability to tender an intelligent and knowing guilty plea because he was precluded from assessing the risks and benefits of pleading guilty. In the words of the Court of Appeals for the Fifth Circuit, the defendant's knowledge of the correct information "would have been likely to affect his willingness to plead guilty." Johnson, 1 F.3d at 302.

The court in Raineri, therefore appropriately focused upon whether "the misinformation . . . at the Rule 11 hearing lead [the defendant] to expect a lesser penalty than he actually received." Id. at 42. In doing so, the court rejected the position of those courts that have concluded that "a defendant should not be heard to complain if he ultimately gets the benefit of the lesser sentence that was inaccurately described . . . [when he pled guilty]" so long as the sentence is less than the sentence indicated by the judge. Id. at 42 (citing cases).10

Although the inquiry into what the defendant might fairly expect can sometimes be answered by focusing upon the defendant's awareness of his or her maximum exposure, the example in Raineri demonstrates that such an approach

_____

However, "[i]n truth, Whyte was subject to a mandatory minimum term of ten years, not five, a possible maximum term of life, not twenty years, a supervised release term of five years, not four, and a fine of $4,000,000, not $2,00,000." Id., at 130. Nevertheless, the district court subsequently held that its failure to inform Whyte of the correct exposure was harmless error. The court of appeals reversed.

10. We recognize that some of the language of the opinion in Raineri, like the language in Andrades, suggests that the court is applying a bright line rule. For example, the court states: "[c]ourts have commonly held that such errors are harmless when the defendant receives a combined sentence of imprisonment and supervised release that is less than the maximum term of imprisonment earlier described. The same rule is followed where the defendant is required to pay restitution in an amount less than the potential fine of which he is warned." 42 F.3d at 42. However, we do not interpret the court as adopting such a rule –– especially in view of the persuasive and helpful hypothetical we have quoted above. Rather, we believe the court was simply noting that a bright line rule has been used to resolve issues arising under Rule 11.

16

will not always resolve the analysis in a manner consistent with the gravity of the court's inquiry or the fundamental rights that are involved. We must not forget that the proper inquiry here is the validity of the defendant's waiver of constitutional guarantees.

This is a subjective, highly individualized test. We must focus on the defendant's ability to tender a knowing and intelligent waiver of constitutional rights given the misinformation he or she received. Johnson, supra. For example, in United States v. Goins, 51 F.3d 400 (4th Cir. 1995), the trial court's failure to properly inform a defendant about a mandatory sentence was ruled not to be harmless under Rule 11(h). In reviewing the error, the court of appeals focused upon "whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." Id. at 402 (citing United States v. Johnson, 1 F.3d at 302.)11

We conclude that an error will be regarded as harmless under Rule 11(h) only if the government can establish that the error is unlikely to have affected a defendant's willingness to waive his or her rights and enter a plea of guilty. See United States v. Reynoso, 254 F.3d 467, 475 (3d Cir. 2001) (distinguishing the burden of proof under harmless error review from the burden of proof under plain error review).

In conducting that inquiry we must obviously consider the nature of the error, and determine if, given the entire record (including the defendant's individualized circumstances, criminal record, role in the offense, and concession for pleading guilty), it affirmatively appears unlikely that the error materially hampered his or her

_____

11. In making this determination, the court alluded to three factors: 1) "what the defendant actually knows when he pleads guilty on the basis of an affirmative indication in the record;" 2) the additional information the defendant would have been advised of in compliance with Rule 11; and 3) "how the additional or corrected information would have likely affected the defendant's decision." Id. (citing United States v. Padilla, 23
F.3d 1220, 1222 (7th Cir. 1994) and United States v. Johnson, 1 F.3d 296, 302 (5th Cir. 1993)).

17

ability to assess the risks and benefits of pleading guilty. At first blush, it may appear that such an inquiry is very straightforward whenever, as here, a defendant is misinformed about the amount of supervised release he or she is exposed to, but is correctly informed that the maximum incarceration is life imprisonment, and the ultimate sentence (including supervised release) is substantially less than life. However, focusing only upon the severity of the maximum sentence will sometimes oversimplify the inquiry. See Raineri, supra.

A defendant with a history of addiction may plead guilty in return for a sentence that lengthens imprisonment while reducing supervised release, and not plead guilty to a sentence with a longer "tail" of supervised release and a somewhat shorter period of incarceration. Such a defendant may feel that his or her addiction will so impact the potential for successful special parole that extended incarceration provides a better chance of rehabilitation and/or less confinement in the "long run." If such a defendant is misinformed about the amount of supervised release that can be imposed he or she may not be able to accurately gauge the risks of pleading guilty. The resulting error may not be harmless therefore, even if the sentence that is ultimately imposed is less than the maximum imprisonment authorized by law and explained to defendant.

Here, Powell was on probation at the time of the instant offense. As discussed above, he may have concluded, despite his horrendous prior record, that he would not receive the maximum sentence. However, given his criminal history, a statutory maximum of life imprisonment, and Powell's knowledge that the court had to impose at least the 15 year mandatory minimum, we can not agree that the error in informing him of supervised release hampered his ability to gauge the risks and benefits of pleading guilty. Nothing on this record supports that claim. We recognize that Powell expected that he would not receive more than three years of supervised release. The supervised release term, however, is only one of the many factors that Powell had to weigh when deciding whether or not to plead guilty.

18

Before pleading guilty Powell understood that the government would make whatever sentencing recommendation it deemed appropriate. Powell agreed that the court could impose a sentence of life imprisonment, and that the court had to impose at least the 15-year mandatory minimum term of imprisonment and a three year term of supervised release. Powell was aware that the court was not bound by any of the terms of the plea agreement, and that he could not withdraw his plea if the court declined to follow any recommendation, motion or stipulation contained in the agreement. Powell and the government also stipulated that Powell's offense level was a 33 and that he was eligible for a three-level downward departure for acceptance of responsibility. The sentence reduction triggered by that departure would have been lost if Powell had chosen to go to trial.

Despite Powell's current focus on the extra two years of supervised release that he was not expecting, we are satisfied that he would not have done anything differently had he known that he was exposing himself to five years of supervised release as opposed to three years at the conclusion of his prison sentence. Accordingly, we hold that the error here was harmless under Rule 11(h). That does not, however, mean that Powell is entitled to no relief.

2. Whether the Government Breached the Guilty Plea Agreement

Powell contends that he is entitled to specific performance because the government breached the guilty plea agreement that told him that he was only exposed to a maximum term of three years of supervised release. As noted above, it is undisputed that the government did inform him that the plea would only expose him to three years supervised release, and the court confirmed that at the change of plea hearing.

However, to the government's credit, following oral argument, the United States Attorney's Office sent a letter stating that it would recommend a three-year term of supervised release on remand if the district court asks for a recommendation from the government. The government explained:

19

> The reason is that . . . if the defendant is given the
> benefit of the doubt the plea agreement may
> conceivably be read as a promise by the government to
> recommend a term of supervised release of no more
> than three years. If that is accurate, and in order to be
> conservative, we assume it is, that means the
> government is bound by its agreement not to make any
> representation to the district court inconsistent with
> the plea agreement. See, e.g., United States v. Nolan-
> Cooper, 155 F.3d 221, 236 (3d Cir. 1998). While the
> district court has authority under the plea agreement
> to enter any legal sentence, the government may not
> contradict any promise it made regarding the position
> the government will take.

Letter dated March 9, 2001 from Asst. U.S. Atty. Robert A. Zauzmer, Esq. and Asst. U.S. Atty. Kathleen Rice, counsel for the government. We commend AUSAs Zauzmer and Rice for their candor and the fairness of the position they have taken here. Inasmuch as we must remand this matter under United States v. Mummert in any event to resolve the motion for a downward departure, and inasmuch as the government is willing to make this recommendation upon remand, we conclude that the issue of Powell's supervised release is best resolved by affording the government an opportunity to allow the district court to request a recommendation, and then sentence in the manner the court deems most appropriate under these circumstances.

## IV. Conclusion

For the foregoing reasons, we will vacate the sentence and remand to the district court for clarification of its reasons for denying Powell's pro se motion for downward departure. The district court will then have an opportunity to elicit the government's position regarding resentencing in view of Powell's claim for specific performance.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

20