

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-9-2002

# USA v. Dixon

Precedential or Non-Precedential: Precedential

Docket No. 01-3845

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Dixon" (2002). *2002 Decisions.* Paper 642.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/642

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed October 9, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-3845/3846

UNITED STATES OF AMERICA.

v.

DANTE DIXON,

Appellant

On Appeal from the United States District Court
for the District of New Jersey

District Court Judge: The Honorable
Joseph A. Greenaway
(D.C. Nos. 01-cr-00090/00099)

Argued on July 19, 2002

Before: McKEE, FUENTES, and ALDISERT, Circuit  Judges

(Opinion Filed: October 9, 2002)

Timothy J. McInnis [Argued]
Law Office of Timothy J. McInnis
521 Fifth Avenue, Suite 1700
New York, NY 10175

Attorney for Appellant Dante Dixon

Christopher J. Christie
United States Attorney
George S. Leone
Chief, Appeals Division

Gail R. Zweig [Argued]
Assistant U.S. Attorney
970 Broad Street
Newark, NJ 07102-2535

Attorneys for Appellee
United States of America

OPINION OF THE COURT

FUENTES, Circuit Judge:

The primary issue in this appeal is whether the District
Court committed plain error in accepting defendant Dante
Dixon's guilty plea by overstating to Dixon, by 30 years, the

statutory maximum sentence he faced. Dixon contends that had he known the correct maximum sentence he faced, he might have chosen to plead not guilty and take his chances at trial. He therefore urges us to vacate his sentence so that he may withdraw his guilty plea and his case may be restored to its pre-guilty plea posture. Because Dixon has failed to demonstrate that he was prejudiced by the overstated sentence, we conclude that he is not entitled to plain error relief. However, we remand this case for the District Court to correct the sentence it imposed.

I.

In January 1997, Dante Dixon and Michael Stubblefield orchestrated a scheme to obtain several hundred unauthorized credit cards. Their scheme involved the use of sham operations to create fake mail-drop addresses. They also directed their so-called "employees" to collect personal information regarding real persons, both living and deceased, and to submit fraudulent credit card applications in those persons' names. The criminal enterprise operated out of several states including New York and New Jersey.

2

On July 25, 2000, Dixon was charged in a criminal complaint with conspiring to engage in credit card fraud, contrary to 18 U.S.C. S 1029(a)(2) and in violation of 18 U.S.C. S 1029(b)(2).1 At his initial appearance before a Magistrate Judge, Dixon was informed that he faced a maximum penalty of 10 years, assuming that he did not have a prior federal conviction for credit card fraud. In case of a prior conviction, Dixon was told that he faced a maximum penalty of 20 years.

Pursuant to a negotiated plea agreement, Dixon agreed to plead guilty to two one-count Informations. One Information was filed in the District of New Jersey, and the second was filed in the Southern District of New York and transferred to the District of New Jersey under Federal Rule of Criminal Procedure 20. Each Information charged him with conspiracy to commit credit card fraud in violation of 18 U.S.C. S 1029(b)(2). The plea agreement provided that the maximum statutory term Dixon faced with respect to each count was twenty years' imprisonment. The agreement further provided that in exchange for the plea, federal prosecutors in neither the District of New Jersey nor the Southern District of New York would bring any additional charges against Dixon arising out of the conspiracy to commit credit card fraud that was effectuated in each jurisdiction.

In its pre-sentence report, the Probation Department calculated the amount of loss incurred by victims of the conspiracy, based upon figures furnished by the Government, to be $1,650,301. In the plea agreement, however, the parties agreed to stipulate a lower loss range to the court of more than $800,000, but less than $1.5 million, thereby yielding a lower base offense level for Dixon

under the Sentencing Guidelines. It was further stipulated,

_____

1. The criminal complaint refers to both S 1029(a)(2), which establishes the substantive offense of credit card fraud, andS 1029(b)(2), which specifies a separate sentencing scheme for conspiracy to commit a violation of S 1029(a), and therefore incorporates substantive elements of S 1029(a). Dixon was charged with two counts of conspiracy to commit credit card fraud, in violation of S 1029(b)(2). He was never charged with violation of the substantive offense of credit card fraud under S 1029(a)(2) standing alone.

subject to the District Court's approval, that Dixon's recognition and acceptance of responsibility would yield a 2 level decrease in offense level under U.S.S.G. S 3E1.1(a). For his timely notice of his intent to plead guilty, the Government agreed to recommend that Dixon receive an additional 1 level reduction if his Guidelines offense level was 16 or greater.

Dixon waived indictment in February, 2001, and proceeded to enter a guilty plea to each of the one-count Informations in which he was charged. At his plea hearing, Dixon was informed that he faced a statutory maximum penalty of 20 years' imprisonment for each count to which he was pleading guilty, for a total maximum sentence of 40 years.

At sentencing, the District Court granted Dixon's motion to maintain the loss amount at under $1.5 million. Accordingly, the court found that the base offense level of 6 should be increased by 11 levels, in accordance with the plea agreement, rather than 12 level increase which would have resulted from the loss amount calculated in the pre-sentence report. The court then applied a 6 level upward adjustment under U.S.S.G. S 3B1.1(a) and (b), finding that Dixon was an organizer or leader of five or more participants and that he was involved in more than minimal planning. The court then granted a 3 level reduction based on Dixon's acceptance of responsibility. These adjustments yielded a total offense level of 20 and a criminal history category of V which resulted in a sentencing range of 63-78 months. The District Court ultimately imposed a custodial sentence of two concurrent terms of 75 months.

Dixon filed a timely Notice of Appeal. In the course of preparing what appellate counsel anticipated would be an Anders brief, counsel re-read the charging statute and discovered for the first time that Dixon had been misadvised at various stages of his case, including the plea hearing, as to his maximum statutory exposure. Because no one discovered this error until appeal, Dixon did not raise this issue before the District Court.

The Government and defense counsel now agree that an error was made each time Dixon was informed that he

faced a maximum penalty of 20 years on each of the counts to which he pled guilty, and a total of 40 years. Dixon actually faced a maximum of five years for each of the two counts, for a total of 10 years.

The District Court had subject matter jurisdiction over this case under 18 U.S.C. S 3231, and this Court has jurisdiction over the appeal under 28 U.S.C. S 1291.

II.

Credit card fraud under S 1029(a)(2) carries a maximum ten year sentence. If the defendant has a prior federal credit card fraud conviction under this section, S 1029(c)(1)(B) doubles the statutory maximum to twenty years. Section 1029(b)(2), however, establishes a separate statutory maximum sentence for conspiracy to engage in credit card fraud of only one half of the maximum sentence for the substantive offense. Therefore, conspiracy to commit credit card fraud carries a maximum term of 5 years, and a doubled maximum of 10 years if the defendant was previously convicted of credit card fraud under this statute.[2]

_____

2. Section 1029, entitled "Fraud and related activity in connection with access devices," states in relevant part:

> (a) Whoever-- . . .
>
> (2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period;
>
> . . . shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.
>
> (b) . . . (2) Whoever is a party to a conspiracy of two or more persons to commit an offense under subsection (a) of this section, if any of the parties engages in any conduct in furtherance of such offense, shall be fined an amount not greater than the amount provided as the maximum fine for such offense under subsection (c) of this section or imprisoned not longer than one-half the period provided as the maximum imprisonment for such offense under subsection (c) of this section, or both.
>
> (c) Penalties. --

The Government, Dixon's trial counsel, and the District Court all determined Dixon's statutory maximum sentence based on two apparent incorrect understandings: 1) that the term for conspiracy and the substantive offense were the same; and 2) that Dixon had a prior federal credit

card conviction under S 1029. Based on these misunderstandings, the plea agreement clearly stated that Dixon faced a total maximum sentence of 20 years on each count, for a total of 40 years. The District Court gave Dixon the same instruction at the plea hearing. However, under a correct reading of the statute, the complaint and Informations, and Dixon's prior criminal history (namely his lack of a prior federal credit card fraud conviction), Dixon faced a maximum of 5 years on each count, for a total of 10 years. Thus, all the parties overstated the maximum statutory sentence by 30 years.

Defendant now contends that when he was incorrectly advised of the maximum penalties that he faced, he was deprived of his right to enter a voluntary and knowing plea, and that he should therefore be permitted to withdraw his guilty plea, have his sentence vacated, and have his case remanded to the District Court. Defendant specifically argues that the misinformation he was given amounts to a violation of Federal Rule of Criminal Procedure 11(c)(1).

Rule 11(c)(1) requires, among other things, that a district court taking a plea advise the defendant of the maximum jail time he faces if he pleads guilty. It provides that

---

> (1) Generally.-- The punishment for an offense under subsection (a) of this section is --
>
> (A) in the case of an offense that does not occur after a conviction for another offense under this section --
>
>  (i) if the offense is under paragraph (1), (2), (3), (6), (7), or (10) of subsection (a), a fine under this title or imprisonment for not more than 10 years, or both . . .
>
> (B) in the case of an offense that occurs after a conviction for another offense under this section, a fine under this title or imprisonment for not more than 20 years, or both. . . .

11 U.S.C. S 1029 (emphases added).

6

> (c) . . . [b]efore accepting a plea of guilty . . . , the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . .
>
> (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law . . .

Fed. R. Crim. P. 11(c) (emphases added).

A defendant who fails to object to a Rule 11 error before the District Court, as Dixon failed to do, must satisfy the plain error standard of review on appeal. United States v.

Vonn, 122 S. Ct. 1043, 1046 (2002). The burden is upon the defendant to satisfy a four-part test in order to obtain plain error reversal of a criminal conviction. The defendant must show that: "(1) an error was committed; (2) the error was plain, that is, clear and obvious; and (3) the error affected the defendant's substantial rights." United States v. Syme, 276 F.3d 131, 143 (3d Cir. 2002) (internal quotations omitted). See also United States v. Vazquez, 271 F.3d 93, 99 (3d Cir. 2001) (en banc); United States v. Reynoso, 254 F.3d 467, 474 (3d Cir. 2001) (citing United States v. Olano, 507 U.S. 725, 732, 734 (1993)).

In cases where the first three elements are satisfied, an appellate court may "exercise its discretion to order such a correction only if the error, 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " United States v. Stevens, 223 F.3d 239, 242 (3d Cir. 2000) (quoting Olano, 507 U.S. at 734) (internal citations omitted). The entire record, and not simply the plea colloquy, should be weighed. Vonn, 122 S. Ct. at 1046.

Both the United States and Dixon agree that the District Court committed clear and obvious error in misinforming Dixon as to the statutory maximum sentence he faced. Indeed, all parties now agree that under a proper reading of S 1029(b)(2), Dixon faced a statutory maximum of 5 years on each count, for a total of 10 years. We need not dwell any further on the first two prongs of the plain error analysis. This case therefore focuses on the third and fourth prongs of the plain error test.

This Court has interpreted the third prong's requisite showing of impact upon substantial rights to require a demonstration of prejudice by the defendant. " 'Affected substantial rights' in the context of plain error review 'in most cases . . . means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings.' " United States v. Knobloch, 131 F.3d 366, 370 (3d Cir. 1997) (quoting Olano, 507 U.S. at 734). In this context, the defendant must prove that, were it not for the plain error committed by the District Court at the time of his plea, the outcome of the proceedings would have been different. In other words, Dixon must show that he would have pled not guilty if he was correctly told the maximum sentence, and not merely that there may or may not have been a prejudicial impact and that he might have not pled guilty. See, e.g., Vazquez, 271 F.3d at 104 (requiring defendant in plain error case to prove prejudice by showing that his sentence would have been different absent the court's error); Reynoso, 254 F.3d at 475 (stating that "[t]he dispositive question is whether Reynoso has shown that the error 'affected the outcome of the district court proceedings' "); United States v. Nappi, 243 F.3d 758, 770 (3d Cir. 2001) ("Nappi must convince us that, had he known that the District Court was going to rely on the state PSI, he would have done something by way of argument or proof relating to the document that probably would have

impacted upon the Court's sentence."); United States v. Cleary, 46 F.3d 307, 310 (3d Cir. 1995) (stating that the defendant "must show that he was prejudiced by the error, i.e., that he did not understand the consequences of his plea or that, if he had been properly advised about the effect of special parole, he would not have pled guilty.") (emphasis added).

When assessing prejudice in the context of a plea, we must "determine if, given the entire record (including the defendant's individualized circumstances, criminal record, role in the offense, and concession for pleading guilty), it affirmatively appears [ ] likely that th e error materially hampered his or her ability to assess the risks and benefits of pleading guilty." United States v. Powell , 269 F.3d 175, 185 (3d Cir. 2001) (emphasis added). Here, we are not persuaded that but for the error made in determining his

maximum statutory sentence, Dixon's choice to plead guilty would have been any different.

Defendant's brief contains numerous assertions claiming that had he "known [the true sentence he faced], he may have chosen to present his case to a jury." Def. Br. at 8 (emphasis added). Defendant's counsel also states in his reply brief that he wishes to "withdraw his plea and presumably take his chances at trial." Def. Rep. Br. at 6 (emphasis added). Defendant goes so far as to argue that "there should be a presumption that a defendant might well have forsaken a guilty plea if he had received accurate sentencing information, unless there is evidence in the record that suggests otherwise." Id. at 4 (citing, inter alia, United States v. Gigot, 147 F.3d 1193, 1199 (10th Cir. 1998)). However, Dixon never clearly and unmistakably asserted that had he been correctly informed of the sentence he faced, he would, in fact, have pled not guilty and gone to trial. Further, at oral argument this Court repeatedly asked Dixon's counsel whether Dixon would have pled not guilty. Every time, counsel demurred and only suggested that Dixon might have pled not guilty.

We believe that Dixon's statements as to what he might have done, in the absence of at least some convincing affirmative assertions as to what he would have done, are insufficient to demonstrate any actual effect on his substantial rights. Indeed, the record reveals many reasons why Dixon would have pled guilty even if he had been informed of the correct statutory maximum sentence he faced. In accordance with the plea agreement, Dixon was to receive a 3 level reduction under the Sentencing Guidelines for his acceptance of responsibility. Additionally, the Government agreed that it would not seek more than an 11 level increase in Dixon's base offense level under the Guidelines even though the total loss to victims qualified Dixon for a 12 level increase.

Perhaps most importantly, the Government promised that

no additional charges in connection with the credit card fraud schemes would be brought against him by the United States Attorney's Offices in the two jurisdictions in which he had been charged. The pre-sentence report identifies at least five other instances in which the defendant used one

or more credit cards to acquire $1,000 or more within a one-year period. On each of the five potential additional counts, Dixon could face 10 years for each substantive offense, or five years each for conspiracy. 18 U.S.C. S 1029(a)-(c). These charges could therefore have subjected Dixon to as much as 50 years in addition to the time faced on the current charges. It thus appears to us that, among other reasons, Dixon pled guilty early in this case to avoid two separate indictments in two jurisdictions on multiple substantive offenses as well as multiple conspiracy counts.

Based on the totality of the record and the lack of any affirmative representations that Dixon would have pled not guilty if he was properly informed at the time of his plea, we are unable to conclude that the correct information would have changed Dixon's decision and thereby affected the outcome of the proceedings. Thus, we find no showing of prejudice here.

Even if we were to presume that the error in this case affected Dixon's substantial rights, he cannot establish that "the error 'seriously affected the fairness, integrity or public reputation of judicial proceedings.' " United States v. Wolfe, 245 F.3d 257, 262 (3d Cir. 2001) (quoting United States v. Turcks, 41 F.3d 893, 897 (3d Cir. 1994)). We believe it highly unlikely that Dixon would forgo the benefits he received in the plea agreement in this case to go to trial and run the risk of a conviction and a lengthy sentence. The evidence of Dixon's guilt in this case is overwhelming. He was sentenced to 6.25 years total, whereas if he goes to trial on all possible charges, he could face at least 50 years. Under these circumstances, even if we assumed prejudice, we would decline to exercise our discretion to notice plain error in this case.

III.

While we do not find plain error, the Government has identified an additional issue that defense counsel has not raised, but which requires us to remand this case to correct Dixon's sentence.

Dixon was sentenced to 75 months concurrently on each count. However, under the correct reading of S 1029, Dixon

faced a statutory maximum of only 60 months on each count. Because the District Court's sentence illegally exceeded the statutory maximum of 60 months (5 years) on

each count, we must remand this case for the sole, limited purpose of permitting the District Court to resentence Dixon in accordance with the applicable statute as well as with the applicable Guideline provisions. In any case, the sentence should not exceed the total of 75 months to which Dixon was first sentenced.

IV.

For the aforementioned reasons, we decline to notice plain error with respect to Defendant's plea. However, we REMAND the case to the District Court for the limited purpose of correcting the judgment of sentence in accordance with this opinion.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

11