

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-2003

# USA v. Simpkins

Precedential or Non-Precedential: Non-Precedential

Docket 02-3238

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Simpkins" (2003). *2003 Decisions.* Paper 535.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/535

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Case No:  02-3238

_____

UNITED STATES OF AMERICA

v.

ROBERT RANDY SIMPKINS,

Appellant

On Appeal From The United States District Court
For The Western District of Pennsylvania
(Crim. No. 99-CR-120)

District Judge:  The Honorable Robert J. Cindrich
_____

Submitted Under Third Circuit LAR 34.1(a)
May 14, 2003
_____

Before: RENDELL, SMITH and ALDISERT, Circuit Judges

(Opinion Filed:  May 21, 2003)
_____

OPINION
_____

SMITH, Circuit Judge

# I. INTRODUCTION

Robert Randy Simpkins alleges that by failing to explain that a violation of supervised release could result in up to five years of additional incarceration, the District Court committed a plain error which affected his substantial rights. We disagree and will affirm the sentence of the District Court.

# II. FACTS AND PROCEDURAL POSTURE

On July 21, 1999, Simpkins was charged with one count of conspiracy to distribute and possess with intent to distribute cocaine ("Count One"), in violation of 21 U.S.C. § 846, one count of conspiracy to launder money instruments ("Count Two"), in violation of 18 U.S.C. § 1956(h) and nine counts of laundering money instruments, in violation of 18 U.S.C. § 1956(a).

On October 31, 2000, the day scheduled for trial, Simpkins entered a plea of guilty to the two conspiracy counts: Count One and Two. Although the plea agreement that had been reached was not reduced to writing, its terms were orally placed into the record at that time. The government and Simpkins stipulated that Simpkins was responsible for the distribution of more than 500 grams but less than 1.5 kilograms of crack cocaine. The government agreed to: dismiss the nine money laundering counts, request a 2-level reduction for acceptance of responsibility and leave it to the court's discretion as to whether to grant a 3-level reduction, oppose any enhancements, and take no position on defense counsel's request for sentencing at the low end of the applicable guideline range.

2

The government also agreed not to oppose defense counsel's request that Simpkins be given credit for his time served in state prison.

During the plea colloquy, the District Court advised Simpkins that Count One had a maximum possible penalty of life imprisonment with a term of supervised release of five years and that Count Two had a maximum possible penalty of 20 years with a term of supervised release of three years. When the District Court asked the prosecutor to give Simpkins an estimate of the probable guideline range he would face, the prosecutor responded with an estimate of 168-210 months. The District Judge and the defendant then engaged in the following exchange:

> The Court: Do you understand that parole has been abolished and that if you are sentenced to a term of imprisonment, you will not be released on parole?
> (Defendant conferred with counsel off the record)
>
> Defendant: Yes, your honor.
>
> [Defense Counsel]: He had a question about supervised release, and I explained that that's tantamount to probation, but it's not parole.
>
> The Court: Right. The thing is, under the federal system now there is no parole. Essentially you have to do the time that you get sentenced to, but the Bureau of Prisons has a system for good time credits basically. The prisoners who don't get in any problems in the system can get a reduction in their sentence, so people get out early that way, but there is no parole. When you get out of prison, then you start your term of supervised release, which in this case will be five years or up to five years, and that would be - you're out of prison but you're still under the supervision of the Court. Do you understand?
>
> Defendant: Yes, your honor.

3

The Court: Do you understand that if the sentence is more severe than you expect, you will still be bound by your guilty plea and you will have no right to withdraw it? (Defendant conferred with counsel off the record).

Defendant: Yes, your honor.

On February 23, 2001, Simpkins was sentenced concurrently on the two counts, for a total of 168 months imprisonment and a five year term of supervised release.[1]

### III. JURISDICTION

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

### IV. STANDARD OF REVIEW

Since no contemporaneous objection to the guilty plea colloquy was made, this court reviews for plain error. *United States v. Vonn*, 535 U.S. 55, ___, 122 S.Ct. 1043, 1046 (2002). Plain error review requires the defendant to demonstrate an "error" which is "plain" and that "affects substantial rights." *United States v. Olano*, 507 U.S. 725, 732 (1993); *see also Vonn*, 122 S.Ct. at 1046. "Affecting substantial rights" means that the error must have been prejudicial to the defendant and have affected the outcome of the district court proceeding. *Olano,* 507 U.S. at 734. The decision to correct the forfeited error is "within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public

---

[1] On August 2, 2002 the District Court entered an order appointing the Federal Public Defender to represent Simpkins and reinstating his appellate rights nunc pro tunc, and notice of appeal was filed on August 12.

4

reputation of judicial proceedings.'" *Id.* (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

## V.    LEGAL ANALYSIS

Fed. R. Crim. P. 11(c)(1) requires that the district court advise the defendant of "the maximum possible penalty provided by law, including the effect of any . . . supervised release term . . ." To satisfy this requirement, a district court should explain "that a term of supervised release is imposed in addition to any sentence of imprisonment and that a violation of the conditions of supervised release can subject the defendant to imprisonment for the entire term of supervised release, without any credit for any time already served on the term of supervised release." *United States v. Reyes*, 300 F.3d 555, 560 (5th Cir. 2002) (internal quotations omitted). The District Court's failure to do so here was an error.

Simpkins alleges that by failing to explain that a violation of supervised release could result in up to five years of additional incarceration, the District Court committed a plain error which affected his substantial rights. Simpkins claims this was akin to not telling him he was subject to any supervised release. He argues that this prejudiced him and affected the outcome of the district court proceeding because, had he known that violation of the terms of supervised release could result in an additional five years of incarceration, he would have rejected the plea agreement, pleaded guilty to all charges and challenged the drug quantity at sentencing. Such a course, he claims, might have

5

resulted in a less severe sentence. He supports that claim with the following calculations: he was potentially exposed to a total of 19 years imprisonment (14 years plus 5 years supervised release), but if he had pleaded guilty to all the charges and succeeded in limiting the drug quantity to only the amounts charged in the indictment, his sentencing range would have been 155 to 188 months, plus five-years supervised release. A sentence at the low end of this guideline range would have yielded a total exposure of slightly less than 18 years exposure (12 years and 11 months plus 5 years supervised release).

First, it is perhaps arguable that an error can be deemed to have affected substantial rights so as to change the "outcome of the proceedings" where the defendant merely alleges that, absent the error, he would have rejected the plea agreement, pleaded guilty to all counts, challenged the drug amount at sentencing, and *might* have received a lesser sentence. We need not decide this issue, however, because even if rejecting a plea agreement could constitute a different outcome, Simpkins has not shown prejudice.

Prejudice occurs where it "*affirmatively* appears likely that the error materially hampered [the defendant's] ability to assess the risks and benefits of pleading guilty." *Dixon*, 308 F.3d at 235. The government suggests that since the court advised Simpkins that the maximum possible penalty for Count One was life imprisonment, and the court imposed only 14 years plus five years supervised release, its failure to explain that violation of the term of supervised release could result in an additional five years imprisonment did not affect Simpkins's ability to evaluate the plea agreement and was

harmless error.[2]

"Every circuit court of appeals that has considered a case involving a defendant who is misinformed as to the maximum term of supervised release [or its effects], but who receives a sentence with a combined term of imprisonment and supervised release that is less than the maximum penalty has concluded that this misinformation constituted harmless error." *United States v. Powell*, 269 F.3d 175, 180-81 (3d Cir. 2001); *see also Reyes*, 300 F.3d at 560 (holding that failure to explain the effect of a term of supervised release was harmless error where term of imprisonment combined with maximum imprisonment for violation of supervised release was still less than statutory maximum); *United States v. Schuh*, 289 F.3d 986, 974 (7th Cir. 2002) (same); *United States v. Bejarano*, 249 F.3d 1304, 1306, n.1 (11th Cir. 2001) (same, collecting cases). Despite these holdings, we have declined to adopt a bright line rule, holding that prejudice might still exist even where the total possible imprisonment did not exceed the statutory maximum. *Powell*, 269 F.3d at 180-81.

To assess whether an error might be prejudicial, a court must "determine if, given the entire record, including the defendant's individualized circumstances, criminal record, role in the offense and concessions for pleading guilty, it affirmatively appears likely that

---

[2] The government also argues that counsel stated that he explained the effects of supervised release to the defendant through an analogy to probation, and the defendant had been on probation before, so Simpkins knew the effects of supervised release and the failure of the District Court to so inform him did not hamper his ability to assess whether or not to accept the plea agreement.

the error materially hampered his or her ability to assess the risk and benefits" of his decision. *Dixon*, 308 F.3d at 234-35 (citing *Powell*, 269 F.3d at 185). In *Powell*, we noted that it might be possible to find prejudice even where the total sentence, including the term of supervised release, is less than the statutory maximum because a defendant might reasonably expect to receive less than the statutory maximum and might have good reason to desire a shorter term of supervised release in comparison to the actual sentence. *Powell*, 269 F.3d at 183 n. 7, 184, 186. For example, where a defendant doubts his ability to conform to the conditions of supervised release, as might be the case with an individual who has a history of drug addiction, he might prefer a longer sentence with a shorter period of supervised release. In such a case, being misinformed about supervised release would not constitute harmless error. *Powell,* 269 F.3d at 186.

The circumstances here are not akin to the hypothetical discussed in *Powell*. Simpkins would not be eligible for a shorter term of supervised release had he rejected the plea agreement and challenged the drug amount at sentencing. *See* 21 U.S.C. § 841(a) (imposing a minimum of five years supervised release for any individual imprisoned under this section); 21 U.S.C. § 846 (stating that penalties for conspiracy shall be the same as for the underlying crime). Accordingly, any argument by Simpkins that he would be unlikely to conform to the terms of his supervised release would simply be unavailing.

Nor is there anything to suggest that ignorance of the effects of a violation of the terms of supervised release hampered Simpkins's ability to evaluate the desirability of

accepting the plea agreement. In *Powell*, although the defendant was correctly informed

of the mandatory minimum sentence of 15 years and the maximum of life, he was

incorrectly informed that the period of supervised release was three years instead of five.

In affirming his sentence of sixteen years imprisonment and five years supervised release,

this Court held that based on the statutory minimum and maximum the two year

difference in supervised release did not hamper defendant's ability to gauge the risks and

benefits of pleading guilty. *Powell*, 269 F.3d at 186.

Similarly, in this case, even if we believe that Simpkins did not know that he

might serve five years for violation of the conditions of supervised release, that lack of

knowledge would not affect his ability to assess the overall risks and benefits of accepting

the plea agreement. Simpkins argues that he would have rejected the plea agreement

because by pleading guilty to all counts and yet challenging the drug amount he might

have received a one year reduction in his total sentence, including the term of supervised

release. Because the risks of this course of action would overwhelmingly have

outweighed its benefits, this assertion cannot be taken seriously. Simpkins's theory is

premised on the District Court's: 1) acceptance of Simpkins's drug quantity calculation of

5-15 kilograms of cocaine and 50-150 grams of crack;[3] 2) granting Simpkins a three level

---

[3] Appellant suggests that the drug amount of between 500 grams to 1.5 kilograms of crack cocaine was clearly erroneous based on the fact that the leader of the conspiracy, Eugene Williams, was only charged with 104 grams of crack and 231 grams of cocaine. He also points out that his co-conspirator, Claude Jenkins, whose relevant involvement was similar to Simpkins's, was held responsible for only 116 grams of cocaine. However, when the court asked defendant's trial counsel about the reason for the stipulation, he

reduction for acceptance of responsibility; and 3) sentencing the defendant at the low end of the guidelines range. Yet Simpkins cannot argue that he could have rejected the plea agreement but still have held the government to certain of its terms. Prosecutors in that case would have been under no obligation to recommend the downward adjustment for acceptance of responsibility, nor could they have been expected not to oppose a request for sentencing at the low end of the guideline range. Had the District Court accepted the drug amount proffered by the government and rejected the three-level reduction for acceptance of responsibility, Simpkins could have been sentenced under an applicable guideline range with a high end of 365 months, along with five years of supervised release. That is approximately 16 years more than the sentence he received. Even the low end of the range, based on this hypothetical, would be 292 months and five years of supervised release, approximately ten years more than his actual sentence. No reasonable person would risk such increased exposure for the very modest benefit Simpkins now contends he might have received. Thus, advice as to the effects of

responded that if the government witnesses were to be believed they could establish "astronomical amounts" and that the one witness was prepared to testify that the operation converted ounces of crack cocaine into 4 kilograms of powder cocaine in a one week period. Trial counsel questioned whether such a feat was possible, but stated that the stipulation was appropriate because the government could prove a substantially higher drug quantity than the stipulated amount.

While appellant's current counsel may be correct in suggesting that trial counsel was overly hasty in accepting the stipulation, especially in light of the fact that the amount yielded an offense level of 36 and the drug quantity scale only has one higher level (38), this criticism is simply beside the point. Simpkins is not raising an ineffective assistance of counsel claim, and he was likely to end up with a similar or longer sentence by rejecting the plea agreement even if he was able to establish the lower drug amount.

10

supervised release was not material to Simpkins's calculation as to whether to accept the plea agreement, and the District Court's failure to delve into those effects was not plain error.

## VI. CONCLUSION

Simpkins has not established that he was prejudiced by the District Court's failure to explain the effects of the term of supervised release, and his sentence should be affirmed.

_____

TO THE CLERK:

Please file the foregoing Opinion.

  /s/ D. Brooks Smith    
Circuit Judge
