PRECEDENTIAL


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1720
_____


UNITED STATES OF AMERICA

v.

CLARENCE HOFFERT,
                              Appellant
_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-18-cr-00073-001)
District Judge: Honorable Christopher C. Conner
_____

Argued: November 13, 2019

Before: JORDAN, SCIRICA, and RENDELL, <u>Circuit Judges</u>

(Filed: February 11, 2020 )

Quin M. Sorenson [Argued]
Office of Federal Public Defender
100 Chestnut Street
Suite 306
Harrisburg, PA  17101

*Counsel for Appellant*

Jonathan P. Cantil [Argued]
Wei Xiang
Office of United States Attorney
138 Delaware Avenue
Buffalo, NY  14202

*Counsel for Appellee*

_____

OPINION

_____

**SCIRICA**, *Circuit Judge*

Clarence Hoffert appeals his convictions and sentences under 18 U.S.C. § 1521 for filing false liens against five federal officers who were involved in denying Hoffert's requests to be released from prison, where he is currently serving a lengthy sentence for prior convictions.[1] Hoffert challenges both the

---

[1]  Hoffert was convicted and sentenced by the Court of Common Pleas of Lebanon County, Pennsylvania for

validity of § 1521—contending it is unconstitutionally vague and an overbroad restriction of protected speech—as well as the sufficiency of the evidence presented at his trial. The trial court rejected both challenges, concluding the statute is neither unconstitutionally vague nor overbroad and that the evidence could rationally support a guilty verdict. We will affirm.

## I.

This case is the latest entry in a long and confusing saga relating to Clarence Hoffert's current incarceration at SCI-Albion for convictions arising out of the Court of Common Pleas of Lebanon County, Pennsylvania in 2003. It has its roots in requests that Hoffert made for documents from various governmental entities years after he began serving his sentence. In September 2012, Hoffert asked the Clerk of Court for the Lebanon County Courthouse to provide him a copy of his original sentencing order, explaining that prison officials at SCI-Albion allegedly had difficulty "keeping their records in order" and that Hoffert, in his words, "would like to be able to prove to them what my minimum [sentence] is when the time comes that I shall be eligible for parole." App'x 323. The Clerk of Court quickly responded with a copy of the sentencing order, but noted that "[i]f the SCI needs your paperwork to be resent to them, they must make the request by e-mail or fax." App'x 325.

Shortly after getting a copy of his sentencing order,

consecutive counts of rape (9 ½ to 20 years), corruption of a minor (2 ½ to 5 years), and endangering the welfare of children (40 months to 7 years), for a cumulative total of approximately 15 to 32 years in prison.

3

Hoffert filed a request with the Right-to-Know Office of the Pennsylvania Department of Corrections under Pennsylvania's Right-to-Know Law, 65 Pa. Stat. Ann. § 67.101 *et seq.*, asking for the Department of Corrections to produce a sentencing order with a "seal stamped upon it," along with other associated documents. App'x 342. The request was denied with the explanation that such records "do not currently exist." App'x 344. Hoffert appealed to the Pennsylvania Office of Open Records, the Department of Corrections again searched its records and found nothing, and the Office of Open Records concluded in a final determination that "no responsive records exist within the Department's possession, custody or control." App'x 357–58. Hoffert was advised that he could appeal to the Commonwealth Court of Pennsylvania if he disagreed with the final determination.

Hoffert then filed a *pro se* § 1983 complaint in the United States District Court for the Western District of Pennsylvania, attaching as exhibits several documents relating to his right-to-know request, including the final determination denying his request. Hoffert asserted that he "ha[d] been incarcerated now for over ten years without the proper 'Sealed' documentation," sought damages of $3,500 per day for his "initial and continued illegally held confinement," and demanded his "unbiased and immediate release" from custody. App'x 362. His complaint was dismissed in a report and recommendation adopted by the trial court, which held that (1) Eleventh Amendment immunity prevented Hoffert from seeking damages from the Commonwealth of Pennsylvania; and (2) claims for immediate release from illegal detention are not cognizable under 42 U.S.C. § 1983 and must instead be addressed through a habeas corpus petition. *See Hoffert v. Pennsylvania*, No. 13-162, 2014 WL 4262166 (W.D. Pa. Aug.

4

27, 2014). We affirmed. *See Hoffert v. Pennsylvania*, No. 14-3947 (3d Cir. Jan. 6, 2015) (non-precedential).

Following the dismissal of his complaint, Hoffert filed an administrative tort claim with the Torts Branch of the United States Department of Justice's Civil Division, seeking $7,396,800,000 ($1.6 million per day) for his allegedly unlawful incarceration, which he claimed was "beyond the lawful Decrees of the Laws of Commerce and without use of a compact/contract/agreement between the Claimant and the U.S. Inc.'s subcorporation, PENNSYLVANIA." App'x 386–93. An "affidavit" associated with the administrative tort claim elaborated on who was purportedly responsible for these damages by providing a long list of state and federal entities that had interacted with Hoffert, from the date of his arrest many years before to the more recent denial of his § 1983 complaint.

The Torts Branch denied Hoffert's administrative tort claim. It determined that Hoffert's claim was not compensable because the claim alleged wrongful acts or omissions by employees of the Commonwealth of Pennsylvania, who were not federal employees and therefore fell outside the scope of the Federal Tort Claims Act. *See* 28 U.S.C. § 1346(b)(1); *Couden v. Duffy*, 446 F.3d 483, 499 (3d Cir. 2006) ("The FTCA waives the federal government's sovereign immunity as to negligent or wrongful actions by *its employees* within the scope of their official duties . . . ." (emphasis added)). Hoffert was informed that if he was dissatisfied with this decision, he could timely file suit in an appropriate United States District Court. Instead, Hoffert wrote a letter to the director of the Torts Branch disputing the decision and threatening to "add your [the director's] name and Agency to my Form 95 Administrative

5

Tort Claim and file it to the superiors of the United States Inc. at the United Nations." App'x 412. This letter was returned to Hoffert by a legal assistant at the Torts Branch with a brief explanation that the Torts Branch was no longer involved in the matter because it had denied the claim.[2]

Things came to a head soon after. On August 4, 2017, Hoffert filed a "Claim of Commercial Lien Affidavit [and] Notice of Non-Judicial Proceeding" in the Office of the Recorder of Deeds, Erie County, Pennsylvania, in which he named five federal officials as lien debtors: (1) the magistrate judge who recommended dismissal of his § 1983 complaint; (2) the district court judge who adopted that recommendation and dismissed that complaint; (3) one member of the Third Circuit Court of Appeals panel that affirmed the dismissal of the complaint; (4) the director of the Civil Division's Torts Branch involved with the denial of Hoffert's administrative tort claim; and (5) the legal assistant who responded to Hoffert's letter disputing the denial of his administrative tort claim.[3] These individuals were "now being liened for a

---

[2] During this time, Hoffert also submitted various filings to the Secretary of the Treasury of Puerto Rico, such as an "Affidavit Notice Demanding Setoff of Account," in which he requested the Secretary's "most expedient intervention at correcting the record by paying the bond to setoff the account charged against the legal fiction U.S. vessel Clarence Hoffert by the Lebanon County Court of Common Pleas," among other things. The record does not indicate whether Hoffert ever received a response to these entreaties.

[3] Two Pennsylvania state officials were also named.

minimum amount of $650,000 U.S. Dollars each" because they had allegedly failed to comply with Pennsylvania law, "chose to ignore the un-Constitutional sanctions imposed against [Hoffert]," committed "treason," and had engaged in other purported transgressions. App'x 426. The liens were "intended to seize all real and movable property of the [seven] Lien Debtors," as well as the property of their spouses and children. *Id.* Hoffert claimed that each of these individuals was liable for $8,000,000 in damages, for a total of $56 million. Hoffert appears to have reached this sum through his interpretation of 18 U.S.C. § 3571, which permits a court to fine defendants found guilty of a misdemeanor or felony offense. In his cover letter to the Recorder's Office, Hoffert specifically requested that the liens be filed "as a Public Record." App'x 423.

A few months after mailing the liens to the Recorder's Office, Hoffert asked the United States Marshals Service to "serv[e] each lien debtor with a Distraint Warrant and to begin collection/liquidation of all their movable assets." App'x 511. In response to this request, two marshals interviewed Hoffert on January 30, 2018, to discuss the various papers he had submitted with his liens and subsequent requests for service. During this interview, which was recorded, Hoffert acknowledged that he wanted the marshals to seize and liquidate the property of the lien debtors.

Nearly two months later, a federal grand jury indicted Hoffert, charging him with five counts of filing or attempting to file a false lien or encumbrance against the real or personal property of an officer or employee of the federal government, in violation of 18 U.S.C. § 1521. Hoffert moved to dismiss the indictment, contending § 1521 was an unconstitutionally vague and overbroad restriction of protected speech. The trial court

denied the motion in a careful and thorough opinion.

At trial, the jury was presented with evidence showing that the document filed by Hoffert at the Recorder's Office was, and was intended to be, a false lien or encumbrance. Jurors heard testimony from each named victim confirming that they did not know Hoffert, had no financial dealings with Hoffert, and did not owe Hoffert any amount of money. Hoffert also took the stand at trial, explaining that he had chosen not to file a habeas corpus petition because he had "watched guys sit ten years in court and their habeas corpus never came up." App'x 219. He thus pursued a different strategy: "I just wanted the notoriety. I really wasn't looking to get any type of monetary value out of anything. . . . I just wanted to show that we're still being held without the proper paperwork." App'x 220. Hoffert also indicated that although he sought damages of $8 million from each victim under his reading of 18 U.S.C. § 3571, which permits a court to impose criminal penalties, he nonetheless understood that only the government could bring criminal charges against a person.

The jury convicted Hoffert on all five counts. He moved for a judgment of acquittal, arguing the evidence was not sufficient to sustain his convictions. The trial court denied his motion, concluding that the record contained sufficient evidence to support the jury's guilty verdict, and sentenced Hoffert to 48 months of imprisonment consecutive to the sentences he was already serving. He now appeals, arguing that 18 U.S.C. § 1521 is unconstitutional and that there was insufficient evidence to support his convictions.

## II.

Section 1521 makes it illegal to file a false lien against federal officials for the performance of their official duties:

> Whoever files, attempts to file, or conspires to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of an individual described in section 1114, on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation, shall be fined under this title or imprisoned for not more than 10 years, or both.

18 U.S.C. § 1521. Hoffert asserts § 1521 is unconstitutional because the scienter requirement "knowing or having reason to know" is vague and overbroad. As Hoffert challenges the constitutionality of this criminal statute, our review is *de novo*. *See United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011). We have jurisdiction over the final decision of the trial court under 28 U.S.C. § 1291.

## A.

We begin with Hoffert's vagueness challenge to § 1521. A conviction violates due process if a criminal statute on which

the conviction is based "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). "For the criminal context in particular, vagueness challenges 'may be overcome in any specific case where reasonable persons would know their conduct puts them at risk of punishment under the statute.'" *United States v. Ferriero*, 866 F.3d 107, 124 (3d Cir. 2017) (quoting *United States v. Moyer*, 674 F.3d 192, 211 (3d Cir. 2012)). A criminal statute need only give "fair warning" that certain conduct is prohibited, *Ferriero*, 866 F.3d at 124, and "one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line," *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952).

Section 1521's scienter requirement, or one quite similar to it, is ubiquitous in the criminal law, *see, e.g.*, *United States v. Saffo*, 227 F.3d 1260, 1268 (10th Cir. 2000) (collecting statutes), and has withstood numerous vagueness challenges. In *Gorin v. United States*, the Supreme Court considered a vagueness challenge to the Espionage Act, which criminalized certain conduct when a defendant had "intent or reason to believe" that certain information would "be used to the injury of the United States, or to the advantage of any foreign nation." 312 U.S. 19, 27–28 (1941). In rejecting the challenge, the Court found "no uncertainty in this statute which deprives a person of the ability to predetermine whether a contemplated action is criminal," and focused in particular on the "obvious delimiting words" of the scienter requirement, which "require[d] those prosecuted to have acted in bad faith."

10

*Id.*[4] We think it clear that if the scienter requirements challenged in *Gorin* and many other cases were not vague, then neither is § 1521.

Hoffert nonetheless contends that § 1521 is unconstitutionally vague because "entirely innocent persons" could be convicted under a "reason to know" standard. Appellant Br. at 15. We disagree. Rather than permitting the conviction of innocent persons, § 1521 has a scienter requirement that defines the level of culpability for the offense and which has a settled legal meaning. A person has "reason to know" of a certain fact when "a person of ordinary intelligence . . . would infer that the fact in question exists or that there is a substantial enough chance of its existence that, if the person exercises reasonable care, the person can assume the fact exists." *See Reason to Know*, Black's Law Dictionary (11th ed. 2019). As courts have uniformly recognized, a criminal statute

[4] Following *Gorin*, the courts of appeals have consistently rejected vagueness challenges to similar scienter requirements. *See, e.g.*, *Saffo*, 227 F.3d at 1270 (rejecting challenge to "reasonable cause to believe" standard because the defendant could only have understood it to proscribe the sale of illegal pseudoephedrine); *Casbah, Inc. v. Thone*, 651 F.2d 551, 561 (8th Cir. 1981) (rejecting challenge to statute criminalizing the sale of items that a seller "reasonably should know" will be used as drug paraphernalia); *United States v. Featherston*, 461 F.2d 1119, 1121–22 (5th Cir. 1972) (rejecting challenge to 18 U.S.C. § 231's "knowing or having reason to know" requirement because the statute was "sufficiently definite to apprise men of common intelligence of its meaning and application").

employing a "reason to know" standard requires an individual to proceed with reasonable care and to "open his eyes to the objective realities" of a given course of conduct. *Casbah*, 651 F.2d at 561; *see also Fla. Businessmen for Free Enter. v. City of Hollywood*, 673 F.2d 1213, 1219 (11th Cir. 1982) ("The 'reasonably should know' standard does not punish innocent or inadvertent conduct. . . ."). With respect to § 1521, the only court of appeals to have so far construed the statute has similarly held that "[u]nder § 1521, . . . a defendant can be guilty even if he honestly believed that he filed a proper lien so long as the belief was not a reasonable one." *United States v. Williamson*, 746 F.3d 987, 994 (10th Cir. 2014). So instead of being vague, § 1521's use of "reason to know" reveals nothing more complicated than that Congress intended for lien filers to proceed with reasonable care as to the falsity of a lien.

Further undermining Hoffert's vagueness challenge is that § 1521 limits criminal liability to those situations where someone knows or has reason to know of a lien's falsity, which makes the statute *less* vague, not more. A person who files a lien is protected from criminal sanction if he or she acted reasonably under the circumstances as to its falsity, thus allowing individuals to conform their conduct accordingly. *See Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 526 (1994) ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice . . . that [the] conduct is proscribed.") (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)). For similar reasons, we must also reject Hoffert's contention that § 1521's use of a "reason to know" standard is vague because it relies on a "reasonableness" standard. "The mere fact that a penal statute is so framed as to require a jury upon occasion to determine a question of reasonableness is not

sufficient to make it too vague to afford a practical guide to permissible conduct." *United States v. Ragen*, 314 U.S. 513, 523 (1942).[5]

Finally, Hoffert argues that his conduct—in contrast to, say, espionage—is not "inherently unlawful in some way," because filing liens is a normal part of everyday commercial activity. Reply Br. at 4–5. Hoffert's premise is flawed—he did not just file a lien, but rather a false, retaliatory lien against federal officials—but whatever the case, this distinction is immaterial. The dispositive question for whether a statute is unconstitutionally vague is not the "inherent" lawfulness of certain conduct, but whether "reasonable persons would know their conduct puts them at risk of punishment under the statute." *Ferriero*, 866 F.3d at 124. We find that nothing in the statute prevented Hoffert from knowing that his course of conduct put him at risk of punishment. Section 1521 is not vague, and any individual "desirous of observing the law will have little difficulty in determining what is prohibited by it." *Omaechevarria v. Idaho*, 246 U.S. 343, 348 (1918).

**B.**

We now turn to Hoffert's other facial challenge under the First Amendment. "In the First Amendment context, . . . a law may be invalidated as overbroad if 'a substantial number

---

[5] Because § 1521's scienter requirement is clear in its language and provides a guide to conduct, Hoffert's argument about whether the trial court erred when it instructed the jury on a "good faith" defense is irrelevant. Regardless of whether the defense is available under § 1521, the statute is not vague either way.

of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Ferriero*, 866 F.3d at 125 (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)). A law must be "*substantially* overbroad" to be unconstitutional, *Williams*, 553 U.S. at 303, and the "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge," *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Invalidation for overbreadth is "'strong medicine' that is not to be 'casually employed.'" *Williams*, 553 U.S. at 293 (quoting *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999)).

Determining whether a statute is unconstitutionally overbroad is a two-step process. "The first step in overbreadth analysis is to construe the challenged statute," followed by the second step of evaluating whether the statute, as construed, "criminalizes a substantial amount of protected expressive activity." *Williams*, 553 U.S. at 293, 297. Section 1521's construction is straightforward: it is illegal to file a false lien against federal officials on account of the performance of their official duties when the filer knows or has reason to know the lien is false. Section 1521 thus prohibits a relatively narrow band of activity.

Although Hoffert must show § 1521 criminalizes a substantial amount of protected speech, he cites no authority or evidence to indicate that it does.[6] Indeed, there is much cutting

---

[6] Hoffert cites *Tyler v. University of Arkansas Board of Trustees*, 628 F.3d 980 (8th Cir. 2011), and *Augustin v. City*

14

against it. "[T]he First Amendment does not shield fraud," *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003), and we have previously remarked on the "unique problem" that false liens pose, which allow the perpetrator to "file the lien with relative ease" while requiring the victim to "go through a complicated ordeal, such as to seek judicial action, in order to remove the lien." *Monroe v. Beard*, 536 F.3d 198, 209 (3d Cir. 2008) (per curiam) (rejecting First Amendment challenge to confiscation of prisoner legal materials used to file false liens). Given the fraudulent nature of false liens and the low social value of filing them, we conclude that § 1521 does not restrict a substantial amount of protected speech.

## III.

Hoffert also challenges the sufficiency of the evidence to sustain his conviction, which we review *de novo*. *See United States v. Freeman*, 763 F.3d 322, 343 (3d Cir. 2014). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424–25

---

*of Philadelphia*, 897 F.3d 142 (3d Cir. 2018), in support of this argument. But *Tyler* involves the filing of a claim with the Equal Employment Opportunity Commission, not a false lien, and *Augustin* addresses municipal liens and does not involve the First Amendment. Both cases fall far short of showing § 1521 criminalizes a substantial amount of protected speech.

(3d Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A jury's verdict must be upheld unless it falls below the threshold of "bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

Hoffert's sufficiency challenge again centers on the *mens rea* element of § 1521. He asserts his conviction is unsupported by the record because "[n]o witness testified and no evidence showed that Mr. Hoffert knew that the lien was false when filed." Appellant Br. at 18. But as the trial court noted, Hoffert had engaged in an extensive course of conduct to challenge his state convictions, repeatedly ignored advice to file habeas corpus petitions, sought $7.3 billion in damages for his confinement, and even threatened to "add" the director of the Tort Branch to his administrative tort claim after it was denied. As for the lien itself, it sought $8 million from each of five federal officials under Hoffert's calculation of criminal penalties under 18 U.S.C. § 3571, even though he conceded that only the government could seek to impose such penalties. And when asked why he filed the liens, Hoffert responded that he did not file them to recover money but rather to expedite what he perceived to be an unduly slow habeas corpus process. He even went so far as to state that he "just wanted the notoriety," "wasn't looking to get any type of monetary value out of anything," and "just wanted to show that we're still being held without the proper paperwork." App'x 220.

Given the circumstantial evidence of Hoffert's intentions and his own admissions at trial about his mental state, we conclude that the jury could have rationally concluded that Hoffert filed the liens "knowing or having reason to know that such lien[s] or encumbrance[s] [were] false." 18 U.S.C. § 1521; *see also Caraballo-Rodriguez*, 726

16

F.3d at 432 ("Unless the jury's conclusion is irrational, it must be upheld."). Accordingly, we will not disturb the jury's verdict.

## IV.

For the foregoing reasons, we will affirm the trial court's judgment of convictions and sentences.