NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 22-2908 and 23-2500

_____

UNITED STATES OF AMERICA

v.

VICTOR CLAYTON, a/k/a Manny,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-18-cr-00524-001)
District Judge: Honorable R. Barclay Surrick

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on April 12, 2024

Before: CHAGARES, *Chief Judge,* PORTER, and SCIRICA, *Circuit Judges.*

(Filed: October 2, 2024)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge.*

Appellant Victor Clayton pleaded guilty to two counts of sex trafficking and/or attempted sex trafficking of a minor in violation of 18 U.S.C. §§ 1591 and 1594(a). He now argues (1) the District Court erred in denying his motion to dismiss the indictment because Congress lacks the authority to regulate purely domestic conduct through 18 U.S.C. § 1591; (2) the District Court erred in denying his motion to withdraw his guilty plea because the plea agreement included an unenforceable term; and (3) the District Court had no basis to award restitution. For the following reasons, we will affirm.

I.[1]

Clayton prostituted two minors—Minor 1 (age 16) and Minor 2 (age 15)—in February and March of 2018. Specifically, Clayton took photographs of Minor 1 and posted them on Backpage.com, and harbored and maintained her in various hotels in Philadelphia to engage in commercial sex acts. Then, on March 12, 2018, Clayton drove with Minor 1 to Linwood, Pennsylvania, where he picked up Minor 2 and drove both girls back to his mother's house in Philadelphia. The next day, he drove Minors 1 and 2 from Philadelphia to Dunn, North Carolina, where he rented a hotel room with the intent of causing both minors to engage in commercial sex acts. On March 15, 2018, Minor 2 contacted family members about her situation and gave them her location. Her family members contacted the police, who arrived at the hotel and arrested Clayton.

---

[1] Because we write principally for the parties, who are familiar with the factual context and legal history of this case, we will set forth only those facts necessary to our analysis.

On November 15, 2018, a federal grand jury returned an indictment charging Clayton with two counts of sex trafficking and attempted sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591 and 1594(a). Clayton moved to dismiss the indictment on November 19, 2020, which the District Court denied on November 9, 2021. Clayton's trial began on November 15, 2021, but the next day, he chose to plead guilty and enter into a plea agreement with the Government. The plea agreement provided, inter alia, that "[i]f the defendant violates supervised release by committing one or more specified child exploitation offenses, the court will revoke supervised release and require the defendant to serve an additional term of imprisonment of at least 5 years pursuant to 18 U.S.C. § 3583(k)." App. 235. At the plea hearing, the District Court recited the maximum penalty of life in prison and the 10-year mandatory minimum per count, a mandatory minimum of five years supervised release up to a lifetime of supervised release, and that Clayton "could" be reincarcerated for up to five years on each count if he violated supervised release. App. 276. Clayton responded that he understood these penalties. He then pleaded guilty to both counts in the indictment.

On December 23, 2021, Clayton moved to withdraw his guilty plea. The District Court denied his motion in a memorandum and order on July 8, 2022, and denied Clayton's subsequent motion for reconsideration on September 15, 2022. The District Court sentenced Clayton to fifteen years' imprisonment, ten years of supervised release, and a $200 special assessment, as stipulated to in the plea agreement. The District Court subsequently amended its judgment to order restitution in the amount of $3,600.

3

## II.[2]

Clayton first challenges the District Court's denial of his motion to dismiss the indictment. He argues "Congress does not have the power, nor did it intend in its enactment of . . . 18 U.S.C §1591(a)(1) to infringe on wholly domestic criminal activity." Appellant Br. 9. But his argument is unavailing. Section 1591 was enacted as part of the Trafficking Victims Protection Act of 2000 ("TVPA"), Pub. L. No. 106–386, 114 Stat. 1464 (codified as amended in scattered titles of the U.S.C.)—a comprehensive regulatory scheme intended to "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." 22 U.S.C. § 7101(a). In passing the statute, "Congress found that trafficking of persons has an aggregate economic impact on interstate and foreign commerce." *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. 2007) (citing 22 U.S.C. § 7101(b)(12)). And "case law firmly establishes Congress'[s] power to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 17 (2005) (internal quotation marks omitted). Thus, section 1591 is a valid exercise of Congress's commerce clause power, and the statute is constitutional as applied to Clayton's domestic

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. §1291. We review challenges to the constitutionality of a criminal statute de novo. *See United States v. Hoffert*, 949 F.3d 782, 787 (3d Cir. 2020). We review a District Court's ruling on a motion to withdraw a guilty plea for abuse of discretion. *See United States v. Martinez*, 785 F.2d 111, 113 (3d Cir. 1986). And finally, "we exercise plenary review over whether an award of restitution is permitted under law." *United States v. Crandon*, 173 F.3d 122, 125 (3d Cir. 1999).

conduct, which included transporting minors across state lines.

Clayton's reliance on *Bond v. United States*, 572 U.S. 844 (2014) is also misplaced. In *Bond*, a statute criminalizing the use of chemical weapons, enacted pursuant to an international treaty against chemical warfare, did not cover the defendant's conduct of spreading a chemical substance outside another individual's house because the statute contained no "clear indication that Congress meant to reach purely local crimes." 572 U.S. at 860. In contrast, section 1591 contains "clear indication[s]" that Congress intended it to cover Clayton's alleged conduct. *Id.* For example, Congress included the language "affecting interstate or foreign commerce" in section 1591. 18 U.S.C §1591(a)(1). This "indicates Congress'[s] intent to regulate to the outer limits of its authority under the Commerce Clause." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001). Moreover, "the congressional findings incorporated into the TVPA clearly demonstrate Congress's intent to enact a criminal statute addressing sex trafficking at all levels of activity." *United States v. Walls*, 784 F.3d 543, 547 (9th Cir. 2015); *see also* 22 U.S.C. § 7101(b) (12), (14) (providing the findings supporting the statute and noting that "[t]rafficking in persons substantially affects interstate and foreign commerce," and "[n]o comprehensive law exists in the United States that penalizes the range of offenses involved in the trafficking scheme"). And finally, we note that Clayton's conduct involved not just purely local activity, but also interstate activity—transporting Minors 1 and 2 from Pennsylvania to North Carolina to engage in commercial sex acts. Accordingly, the District Court properly denied Clayton's motion to dismiss.

Clayton next contends the District Court erred in denying his motion to withdraw

5

his guilty plea because the plea agreement stated that "[i]f the defendant violates supervised release by committing one or more specified child exploitation offenses, the court will revoke supervised release and require the defendant to serve an additional term of imprisonment of at least 5 years pursuant to 18 U.S.C. § 3583(k)." App. 235. As the Government concedes, that provision is unenforceable as application of section 3583(k)'s five-year mandatory minimum based on a sentencing judge's factual findings made by a preponderance of the evidence violates due process and the right to trial by jury. *See United States v. Haymond*, 588 U.S. 634, 646 (2019) (plurality opinion). But any error stemming from the Government's inclusion of this unenforceable term in the plea agreement was harmless.

First, the District Court correctly advised Clayton at the plea hearing that Clayton "could" be reincarcerated "for five years on each count" if he violated supervised release, not that such term of incarceration was in any way mandatory. App. 276. This remains true post-*Haymond*. Second, the mistake at issue did not concern Clayton's direct sentencing exposure, but rather the possible consequences for any hypothetical future violations of supervised release. "We are hard pressed to imagine how [Clayton's] decision to plead turned on a complete understanding of the potential for further imprisonment if he violated supervised release," *United States v. Warren*, 338 F.3d 258, 259 n.1 (3d Cir. 2003), especially since even if he did violate supervised release, the mandatory minimum would never be imposed. Third, we are satisfied that any "error is unlikely to have affected [Clayton's] willingness to waive his or her rights and enter a guilty plea." *United States v. Powell*, 269 F.3d 175, 184 (3d Cir. 2001). Clayton claims only that "the knowledge of

6

these potentially onerous supervised release consequences *may* have [played] a role in accepting the plea with more favorable sentencing terms." Appellant Br. 21 (emphasis added). But statements of what a defendant "*might* have done, in the absence of at least some convincing affirmative assertions as to what he *would* have done, are insufficient to demonstrate any actual effect on his substantial rights." *United States v. Dixon*, 308 F.3d 229, 235 (3d Cir. 2002) (emphasis in original).

Finally, we reject Clayton's challenge to the District Court's amended judgment awarding restitution. Clayton argues the restitution does not flow from the offense to which he pleaded guilty because the restitution "was awarded for relevant conduct related to the *actual* sex trafficking of Minor 1," and that he only pleaded guilty to "*attempted* sex trafficking." Appellant Supp. Br. 7 (emphasis in original). But the TVPA calls for mandatory restitution "for any offense under this chapter," 18 U.S.C. § 1593(a), and another section of the act states that "[w]hoever attempts to violate section . . . 1591 shall be punishable in the same manner as a completed violation of that section," *id.* § 1594(a). Thus, restitution is also mandatory for any attempted offenses. In this case, Clayton's attempt crime with respect to Minor 1 involved posting photographs of her online, transporting her across state lines, and harboring and maintaining her in various hotels to engage in commercial sex acts. The Government demonstrated that Clayton collected at least $3,600 as a direct result of this conduct. Accordingly, the District Court was required to order restitution in that amount under the TVPA.

## III.

For the foregoing reasons, we will affirm.