UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 24-3174

UNITED STATES OF AMERICA

v.

ASIANA CHRISTINE WILLIAMS,
Appellant

_____

On Appeal from the U.S. District Court
for the Middle District of Pennsylvania,
No. 3:23-cr-00027-001
District Judge Robert D. Mariani

Before: PHIPPS, FREEMAN, and MASCOTT, *Circuit Judges*
Submitted: May 26, 2026; Filed: June 29, 2026

_____

NONPRECEDENTIAL OPINION[*]

PHIPPS, *Circuit Judge*.

A single mother of three children in Luzerne County, Pennsylvania, sold fentanyl to a woman who died from an overdose of those drugs. The mother-dealer was charged, tried, and convicted of three counts – one for distributing the fentanyl that resulted in the overdose, one for distributing fentanyl on a separate occasion, and one for using her home for drug distribution. Afterwards, she waived her right to court-appointed counsel, and she received a 360-month prison sentence. In this *pro se* appeal, she raises five challenges to her convictions. She first argues that she was denied her right to self-representation based on the denial of motions that she filed and defense strategies that she was not permitted to take at trial while represented by counsel. *See Faretta v. California*, 422 U.S. 806, 819–21 (1975). Her second and third arguments challenge the prosecution's handling of

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

evidence; she claims that they withheld exculpatory material from her in violation of *Brady v. Maryland*, 373 U.S. 83, 86–87 (1963), and that they falsified evidence in violation of *Napue v. Illinois*, 360 U.S. 264, 269 (1959). She also contends that her court-appointed attorney was constitutionally ineffective, *see Strickland v. Washington*, 466 U.S. 668, 687 (1984), and that she was actually innocent of distributing fentanyl on the two occasions for which she was convicted, *see Bousley v. United States*, 523 U.S. 614, 623 (1998). For the reasons below, we will affirm her convictions.

## BACKGROUND

On February 14, 2023, a federal grand jury in Scranton, Pennsylvania, returned a two-count indictment charging Asiana Williams, a single mother of three children, with offenses related to drug distribution. Those charges were for the knowing distribution of a controlled substance that resulted in death while aided and abetted by others, *see* 21 U.S.C. § 841(a)(1), (b)(1)(C); 18 U.S.C. § 2, and the knowing distribution of a controlled substance, *see* 21 U.S.C. § 841(a)(1), (b)(1)(C). A superseding indictment returned on October 24, 2023, preserved the original two charges and added a third for maintaining a place for drug distribution as well as for aiding and abetting others in doing so. *See id.* § 856(a)(1); 18 U.S.C. § 2.

The charges related to events more than three years earlier. After they occurred, Williams, who had been a lifelong resident of Luzerne County, Pennsylvania moved to Georgia. She was arrested there and transported to the Middle District of Pennsylvania, where she pleaded not guilty and was represented by court-appointed counsel.

Although she was represented by counsel, Williams filed a series of *pro se* pretrial motions, all of which the District Court denied because there was no obligation to consider *pro se* motions submitted by a party represented by counsel. Additionally, those *pro se*

motions were filed by a man who was not a licensed attorney but who submitted the motions in Williams's name and on her behalf. In response to those filings, the District Court also ordered the Clerk of Court not to receive, docket, or file any motions filed by the man.

At trial, the prosecution introduced evidence for each of the charges. For the first count, the jury heard that on February 17, 2020, paramedics discovered Ceri Mulligan lying unresponsive on the floor with a needle mark in her arm. The prosecution also introduced autopsy and toxicology reports revealing that Mulligan died from a fentanyl overdose, along with expert witness testimony confirming those findings. The jury heard testimony from law enforcement officers that Mulligan's cell phone contained correspondence with Williams and location information indicating that Mulligan purchased fentanyl from Williams on February 15, 2020. Mulligan's former romantic partner, who was himself a fentanyl addict, also testified that he put Mulligan in touch with Williams and that Mulligan purchased fentanyl for him from Williams on February 15, 2020.

As to the second count, the prosecution introduced evidence of a controlled purchase of fentanyl from Williams at her house on March 5, 2020. Mulligan's former romantic partner testified that after coordinating with law enforcement, he made that purchase. Law enforcement testified that the drugs Williams sold in the controlled purchase were fentanyl.

The prosecution also supported the final charge of maintaining a place of drug distribution. On top of the evidence of a controlled buy at Williams's house, multiple witnesses testified that they had purchased drugs from Williams at her house.

After the prosecution's case-in-chief, Williams's counsel argued that the evidence was insufficient to support the first and second counts and moved for a judgment of

acquittal on those counts. *See* Fed. R. Crim. P. 29(a). The District Court denied the motion, and the jury later returned guilty verdicts on all three counts.

Williams then requested that her court-appointed attorney file a motion to withdraw so that she could proceed *pro se*. The District Court conducted a *Faretta* hearing to determine whether Williams's request was "knowing, voluntary, and intelligent," and granted Williams's request to represent herself and appointed standby counsel. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). *See generally Faretta*, 422 U.S. at 835.

Williams then began to represent herself for purposes of sentencing. On October 16, 2024, she mailed seven motions to the District Court in a single envelope, including a motion to dismiss and a motion to exclude certain cell phone evidence. On November 19, 2024, Williams filed a motion requesting an update on whether those two motions had been docketed. The District Court confirmed that it had docketed both motions and identified their respective docket numbers. But, as before, the District Court determined that Williams had not authored those motions herself and that those motions had been prepared by the same non-attorney who had drafted prior motions for her when she was represented by counsel. The District Court denied those motions on that basis.

On November 21, 2024, the District Court sentenced Williams to a 360-month prison term for the first count and 240-month prison terms for the second and third counts – all to run concurrently. It also imposed a three-year term of supervised release, *see* 18 U.S.C. § 3583, a $300 special assessment, *see id.* § 3013(a)(2)(A), and $4,345 in restitution – the cost of Mulligan's funeral, *see id.* § 3663A(b)(3).

Through a notice of appeal, Williams invoked this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291. She filed a waiver of counsel and a *pro se* appellate brief. But then

months later, Williams moved for the appointment of counsel on appeal, which this Court denied.

### DISCUSSION

## A. The *Faretta* Challenge

Williams argues that she was denied her Sixth Amendment right to self-representation. *See generally Faretta*, 422 U.S. at 819–21. Much of her argument challenges the denial of motions. But some of those were filed while Williams was represented by counsel, and the Sixth Amendment does not afford a right to the criminally accused to represent herself while being simultaneously represented by counsel. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984); *see also United States v. Turner*, 677 F.3d 570, 578–79 (3d Cir. 2012). The remaining denied motions were filed after the withdrawal of Williams's counsel, but those were prepared by a non-attorney in Williams's name and on her behalf, and the Sixth Amendment does not grant a criminal defendant the right to be represented by an unlicensed person. *See Wheat v. United States*, 486 U.S. 153, 159 & n.3 (1988). Thus, none of the orders denying Williams's motions infringed on her right to self-representation.

Williams also complains about the loss of self-representation at trial. She asserts that she was not permitted to "control the organization and content of [her] defense," to "argue the points of law," to "question witnesses," or to "address the court and the jury at [the] appropriate point in the trial." *Pro Se* Br. 20–21. But she was represented by counsel at trial, so the Sixth Amendment did not guarantee her those abilities. *See McKaskle*, 465 U.S. at 183.

5

**B. The Challenges to the Handling of Evidence under *Brady* and *Napue***

Williams argues for the first time on appeal that the prosecution failed to disclose exculpatory materials as required under *Brady*, and that it falsified evidence as prohibited by *Napue*. *See Brady*, 373 U.S. at 86–87; *Napue*, 360 U.S. at 269. The problem for her is that both of those challenges are fact-dependent,[1] and there was no factual record developed in the District Court to support either. Without a factual record, those challenges cannot succeed on direct appeal. *See United States v. Green*, 556 F.3d 151, 154 n.2 (3d Cir. 2009) (stating that, in the context of a *Brady* challenge, "because this issue was not formally raised and litigated below, we are thus unable to make the requisite materiality determination based on the record before us"); *see also Lambert v. Blackwell*, 387 F.3d 210, 249 (3d Cir. 2004) (describing a *Napue* challenge in terms of "factual determinations" about whether the prosecution's witnesses committed perjury). Thus, Williams's *Brady* and *Napue* claims are denied without prejudice to Williams's ability to raise them in a motion pursuant to 28 U.S.C. § 2255.

**C. The Ineffective-Assistance-of-Counsel Claim**

Williams argues that her trial counsel was constitutionally ineffective for several reasons, including a failure to challenge the indictments on vagueness grounds. Sometimes the two prongs of this challenge – deficient performance and resulting prejudice, *see Strickland*, 466 U.S. at 687 – are readily apparent from the trial-court record. But when they are not, as is the case here, the ineffective-assistance-of-counsel claim is "not cognizable on direct appeal," and is instead left for adjudication through a collateral

---

[1] *See Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 284–85 (3d Cir. 2016) (en banc) (articulating the elements of a *Brady* violation as evidence that is (1) favorable to the accused, (2) suppressed by the prosecution, and (3) material); *United States v. Williams*, 974 F.3d 320, 355 (3d Cir. 2020) (requiring showings for a *Napue* violation that "(1) the witness committed perjury; (2) the government knew or should have known of the perjury; (3) the testimony went uncorrected; and (4) there is a reasonable likelihood the false testimony affected the verdict").

challenge to the conviction. *United States v. Shah*, 43 F.4th 356, 365 n.8 (3d Cir. 2022); *see also United States v. Perrin*, 149 F.4th 267, 286 (3d Cir. 2025). Therefore, this claim is denied without prejudice. *See United States v. Thornton*, 327 F.3d 268, 272 (3d Cir. 2003).

## D. The Claim of Actual Innocence

Williams also asserts that she was actually innocent of the crimes. From context, it appears that Williams uses the term 'actual innocence' to challenge the sufficiency of the evidence supporting her convictions for distributing fentanyl on the two occasions for which she was convicted. Her counsel did move for acquittal. And she claims that she was framed for Mulligan's death.

Even so, that challenge would not succeed on *de novo* review. *See United States v. Hoffert*, 949 F.3d 782, 790 (3d Cir. 2020). Multiple witnesses – including Mulligan's former romantic partner and law enforcement officers – testified about Williams's drug deal with Mulligan. In addition, evidence from Mulligan's phone suggested that she received the fentanyl from Williams. The autopsy report and the toxicology report indicated that Mulligan died from a fentanyl overdose. And the jury heard witness testimony about the controlled purchase as well. Thus, the jury's verdict did not "fall below the threshold of bare rationality," and a challenge to the sufficiency of the evidence cannot succeed. *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431 (3d Cir. 2013) (en banc) (quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012)).

## CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

7