NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 18-3538, 18-3586, 18-3590,
18-3664, 19-2909 & 19-2917
_____

UNITED STATES OF AMERICA

v.

JESUS BURGOS-MONTANEZ, Appellant in 18-3538
JEAN CARLOS VEGA-ARIZMENDI, Appellant in 18-3586
JOSE R. HODGE, Appellant in 18-3590
SERGIO QUINONES-DAVILA a/k/a Chulin a/k/a Pai, Appellant in 18-3664
OMY A. GUTIERREZ-CALDERON, Appellant in 19-2909
ANIBAL A. VEGA-ARIZMENDI, a/k/a Bebo, Appellant in 19-2917
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 1-16-cr-00009)
District Judge: Honorable Wilma A. Lewis
_____

Argued on December 8, 2022*

Before: CHAGARES, *Chief Judge*, GREENAWAY, JR. and FISHER, *Circuit Judges*.

(Filed: April 4, 2023)

---

* Counsel for five of the Defendants participated in oral argument. The sixth, Yohana Manning, counsel for Jesus Burgos-Montanez, did not participate in argument, as he was on medical leave. This court offered Attorney Manning an opportunity to reschedule argument, which he declined on January 24, 2023.

Yohana M. Manning
Manning Legal Services
2120 Company Street, Suite 2
Christiansted, VI 00820
    *Counsel for Appellant Jesus Burgos-Montanez*

Robert J. Kuczynski   ***ARGUED***
Law Office of Beckstedt & Associates
2162 Church Street
Christiansted, VI 00820
    *Counsel for Appellant Jean Carlos Vega-Arizmendi*

Renee D. Dowling   ***ARGUED***
Law Office of Renee D. Dowling
P.O. Box 1047
Christiansted, VI 00821
    *Counsel for Appellant Jose R. Hodge*

Kye Walker   ***ARGUED***
The Walker Legal Group
2201 Church Street
Suite 16AB, 2nd Floor
Christiansted, VI 00820
    *Counsel for Appellant Sergio Quinones-Davila*

Jennie M. Espada-Ocasio   ***ARGUED***
P.O. Box 13811
San Juan, PR 00908
    *Counsel for Appellant Omy A. Gutierrez-Calderon*

Eszart A. Wynter, Sr   ***ARGUED***
27 Estate Whim, P.O. Box 1847
Frederiksted, VI 00841
    *Counsel for Appellant Anibal A. Vega-Arizmendi*

Delia L. Smith, United States Attorney
Adam Sleeper, Assistant United States Attorney   ***ARGUED***
Everard E. Potter
Office of United States Attorney
5500 Veterans Drive
United States Courthouse, Suite 260
St. Thomas, VI 00802
    *Counsel for Appellee*

———————

OPINION[*]

———————

FISHER, *Circuit Judge*.

These consolidated appeals arise from a lengthy drug conspiracy trial involving

six defendants: Jesus Burgos-Montanez, Jose Hodge, Jean Carlos Vega-Arizmendi,

Anibal Vega-Arizmendi[1], Sergio Quinones-Davila, and Omy Gutierrez-Calderon.[2] From

2014 to 2016, Defendants conspired to smuggle drugs onto St. Croix by boat. They were

eventually convicted of conspiracy to possess with intent to distribute more than five

kilograms of cocaine, as well as either possession or attempted possession of cocaine.

They appeal, arguing errors occurred at trial and sentencing. For the reasons set forth

below, we will affirm the convictions and sentences of all Defendants.

———————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Because Jean Carlos and Anibal share a last name, we use their first names.

[2] This was the Defendants' second trial involving the drug conspiracy. The first trial ended in a mistrial, so they were re-tried in 2019.

## I.[3]

## A. Forfeiture

Before discussing the merits of the Defendants' appeal, we note an error made by the Defendants that potentially results in the forfeiture of some of their arguments.

While the appeal was pending, our Clerk's Office encouraged the Defendants to adopt, pursuant to Fed. R. App. P. 28(i), portions of one another's briefs to minimize repetition. Defendants Jean Carlos, Gutierrez-Calderon, Hodge and Quinones-Davila attempt to incorporate all arguments raised by their co-Defendants by including blanket statements of incorporation in their briefs. This is insufficient. Defendants must make clear the specific issues they are incorporating; otherwise, they have forfeited the issue on appeal. *United States v. Williams*, 974 F.3d 320, 339 n.7 (3d Cir. 2020). "[G]eneral statements of adoption under Rule 28(i) will not be regarded." *Id.* This Court will not "serve as a Defendant's lawyer, 'scour[ing] the record' for him and determining 'which of the many issues of his codefendants [are] worthy of our consideration.'" *Id.* (quoting *United States v. Fattah*, 914 F.3d 112, 146 n.9 (3d Cir. 2019)). Thus, any arguments Defendants attempt to incorporate are forfeited.

## B. Sufficiency of the Evidence

Defendants challenge their convictions based on the sufficiency of the evidence. We review a district court's denial of a motion for judgment of acquittal de novo. *United States v. Hoffert*, 949 F.3d 782, 790 (3d Cir. 2020). In conducting our de novo sufficiency of the evidence inquiry, we view "the record in the light most favorable to the

---

[3] The District Court had jurisdiction under 48 U.S.C. § 1612 and 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 (final decisions).

prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (internal quotation marks, citation, and alteration omitted).

To succeed on Count One, conspiracy to possess with intent to distribute more than five kilograms of cocaine from January 2014 to March 2016, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A)(ii) and 846, the Government needed to prove the following: "(1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal." *United States v. Pressler*, 256 F.3d 144, 147 (3d Cir. 2001). Counts Two through Five are attempted possession with the intent to distribute more than five kilograms of cocaine; to convict, the jury must have been persuaded beyond a reasonable doubt that each defendant "(1) acted with the requisite intent to violate the statute, and (2) performed an act that, under the circumstances as he believes them to be, constitutes a substantial step in the commission of the crime." *United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006). Count Six charged possession with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§§ 841(a), 841(b)(1)(A)(ii), 846 and 18 U.S.C. § 2, where the Government needed to prove that each Defendant "(1) knowingly possessed [the] controlled substance with (2) the intent to distribute it." *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008) (citation omitted). Counts Two through Six were brought under the theory of aiding and abetting, meaning the Government also needed to prove beyond a reasonable doubt that a substantive crime was committed, the Defendant

5

knew a crime was committed, and he "acted with intent to facilitate it." *United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010) (citation omitted).

### 1. Count One

Defendants Quinones-Davila, Burgos-Montanez, Gutierrez-Calderon, and Anibal Vega-Arizmendi challenge the sufficiency of evidence supporting Count One, conspiracy to possess with intent to distribute more than five kilograms of cocaine from January 2014 to March 2016. A conviction for conspiracy requires a unity of purpose and intent among the conspirators, along with an agreement to work together. *Pressler*, 256 F.3d at 147.

Quinones-Davila argues there was insufficient evidence to support his conviction because he and Hodge refused to work together, meaning there were two separate conspiracies—not one, as alleged in the indictment. A conviction must be vacated when the number of conspiracies charged in the indictment and proved at trial differs and the difference "prejudices a substantial right of the defendant." *United States v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989). To determine whether a group of individuals was engaged in a single conspiracy or multiple conspiracies, we consider: (1) "whether there was a common goal among the conspirators"; (2) "whether the agreement contemplated bringing to pass a continuous result that [would] not continue without the continuous cooperation of the conspirators"; and (3) "the extent to which the participants overlap in the various dealings." *United States v. Kemp*, 500 F.3d 257, 287 (3d Cir. 2007) (quoting *Kelly*, 892 F.2d at 259).

6

There was sufficient evidence for a rational jury to find a single conspiracy, as there was a common goal to retrieve cocaine in the waters of St. Croix and the success or failure of the operation depended on the constant drug runs. Additionally, Hodge and Quinones-Davila overlapped in their dealings: Hodge told Timothy Schoenbohm—the Government's confidential informant and primary witness at trial—that Quinones-Davila wanted to meet him, and Hodge made a trip to retrieve drugs for Quinones-Davila. Because there was sufficient evidence of a single conspiracy, there was no variance that could have prejudiced Quinones-Davila's substantial rights.

Burgos-Montanez, Gutierrez-Calderon, and Anibal contend there was insufficient evidence to convict them because they were present but were not aware of the illegal activities of the conspiracy. To sustain a conviction for conspiracy with intent to distribute a controlled substance, the government must introduce drug-related evidence from which "a rational trier of fact could logically infer that the defendant knew a controlled substance was involved in the transaction at issue." *United States v. Boria*, 592 F.3d 476, 481 (3d Cir. 2010). The record shows all three Defendants' participation and knowledge of the conspiracy.

Burgos-Montanez helped bring a heavy fuel tank onto Schoenbohm's boat, the Scorpion, before boarding it himself. Burgos-Montanez was also found on the beach at Knight's Bay near four suitcases containing over 87 kilograms of cocaine, and he fled when police announced themselves. A rational trier of fact could infer Burgos-Montanez knew about the illegality of the conspiracy from the totality of this evidence. *See Caraballo-Rodriguez*, 726 F.3d at 433 (sufficient evidence of conspiracy where the

7

defendant traveled from Puerto Rico to Philadelphia with only a small bag containing $33 and who transferred suitcases that did not belong to him from the baggage conveyor to a vehicle); *United States v. Leon*, 739 F.2d 885, 893 & n.19 (3d Cir. 1984) (sufficient evidence of conspiracy where the defendant was present at the crime scene, associated with those involved in criminal enterprise, and fled from the scene when agents announced themselves).

There is also sufficient evidence of Gutierrez-Calderon's involvement and knowledge of the drug trafficking conspiracy. He provided Schoenbohm with a firearm and later asked Schoenbohm if the Scorpion could go out again for a drug run and offered to pay.

Anibal was present in October 2014 when a group discussed retrieving 71 kilograms of cocaine. Anibal was also on the Scorpion for multiple failed retrieval attempts, and for the successful one when he helped get the cocaine onto the boat.

Ultimately, there was sufficient evidence to convict all of the Defendants of Count One.

### 2. Count Two

Gutierrez-Calderon argues there was insufficient evidence to convict him of aiding and abetting the attempted possession of 80 kilograms of cocaine in November 2014 because he did not provide Schoenbohm with a firearm, and Schoenbohm spoke inconsistently about the gun's origin. To convict an individual of aiding and abetting an attempted possession, the government needs to prove the defendant knew about the crime

8

and helped facilitate it. *Petersen*, 622 F.3d at 208. Despite Schoenbohm's inconsistent testimony, there is enough evidence in the record for a reasonable jury to find Gutierrez-Calderon aided and abetted the attempted possession by giving Schoenbohm the gun.

Schoenbohm testified that Gutierrez-Calderon gave him a firearm for protection before an attempted drug run and told Schoenbohm the gun was a "fully automatic, machine gun" that "shoots real fast." JA 2034–35. However, Gutierrez-Calderon points out that when the police stopped Schoenbohm, he told them the firearm belonged to the car's passenger, Hodge. At trial, Schoenbohm explained he initially lied to the police because he was afraid of the consequences if he said the gun belonged to him. Viewing these inconsistent statements in the light most favorable to the Government, *see Caraballo-Rodriguez*, 726 F.3d at 430, a trier of fact could believe Schoenbohm's explanation at trial and find Gutierrez-Calderon guilty: attempted possession of cocaine occurred, Gutierrez-Calderon knew the crime would occur, and he facilitated the crime by providing Schoenbohm with a gun.

### 3. Count Four

Jean Carlos argues there was insufficient evidence to convict him of attempt because the Government did not prove the gas tank he brought onto the Mako—another boat that often made drug runs—was used for the May 2015 attempt. To be convicted of an attempt, a defendant must perform a substantial step in the commission of the charged crime. *Tykarsky*, 446 F.3d at 469. If the gas was not used for the May 2015 attempt, he argues, then he did not perform a substantial step and should not have been convicted.

9

While mere preparation is insufficient to constitute a substantial step of an attempted crime, gathering needed items or traveling to the scene goes "beyond mere planning." *United States v. Davis*, 985 F.3d 298, 304–05 (3d Cir. 2021); *see also* Model Penal Code § 5.01(2)(f) ("possession, collection, or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission" may be sufficient). Supplying the Mako with gas was a substantial step.

DEA Task Force Officer Peter Kalme testified that Jean Carlos told him that he went to St. Croix in May 2015 with a gas tank to acquire cocaine on the Mako. DEA surveillance of the Mako in May 2015 showed the boat leaving Chenay Bay in the morning and returning after 9:00 p.m. without its lights on. Because Schoenbohm testified that he would turn off the navigation lights to avoid detection when he went out to retrieve cocaine, this indicates the Mako was on a drug run when the DEA surveilled it in May 2015. Thus, a reasonable jury could conclude that Jean Carlos's actions constituted a substantial step towards the May 2015 attempt.

### 4. Count Six

Burgos-Montanez and Gutierrez-Calderon contend the District Court erred when it held there was sufficient evidence to convict them of Count Six, possessing and aiding and abetting others' possession with intent to distribute more than five kilograms of cocaine in November 2015. Gutierrez-Calderon argues he did not directly give Schoenbohm gas money, and thus did not "act[] with intent to facilitate" the possession of cocaine. *Petersen*, 622 F.3d at 208 (citation omitted). Burgos-Montanez takes a

10

different approach, arguing he did not have advance knowledge that the controlled substance was more than five kilograms of cocaine—meaning he did not know the nature of the crime committed—and thus cannot have aided and abetted it. Both Defendants are incorrect.

There was sufficient evidence to convict Gutierrez-Calderon of Count Six because he facilitated the gas payment, which Schoenbohm used to fuel his boat and retrieve drugs. Hodge texted Schoenbohm and told him to text Gutierrez-Calderon, who would send gas money. The same day, Schoenbohm texted Gutierrez-Calderon the number 700 and his own name, and then Gutierrez-Calderon texted Schoenbohm an assortment of numbers and Burgos-Montanez's name. Western Union records show a sender named Jesus Burgos-Montanez sent $700 with a money transfer control number that matched the numbers Gutierrez-Calderon texted Schoenbohm. Although Gutierrez-Calderon did not send the gas money himself, he coordinated the payment. And even though Gutierrez-Calderon never told Schoenbohm explicitly that the payment was gas for a drug run, a reasonable jury could rationally infer this was the payment's purpose and that Gutierrez-Calderon aided and abetted the attempted possession of cocaine.

Burgos-Montanez contends there is no evidence he knew the controlled substance was more than five kilograms of cocaine, and an aider and abettor must have knowledge of the facts triggering penalties—here, whether five or more kilograms of cocaine were intended to be distributed. Burgos-Montanez's cited case addressed whether an aider and abettor of an 18 U.S.C. § 924(c) violation must know the principal would use or carry a firearm during the crime. *Rosemond v. United States*, 572 U.S. 65, 67 (2014). But in the

11

context of § 841(a) and (b) charges—which are the relevant charges here—the defendant need not within the scope of the conspiracy "consciously cognize the amount [of drugs] he is distributing in order to violate the law." *Williams*, 974 F.3d at 363. "[A] person who engages in drug trafficking violates § 841(a), and the penalty for that violation is to be determined according to § 841(b), which provides both a default penalty and heightened penalties based on certain additional findings." *Id.* As a result, it is sufficient that the knowing or intentional distribution or possession occurred; the quantity of the drug is a "factual finding that goes to the sentence to be imposed." *Id*. This interpretation is consistent with *Apprendi* because there the Court "operated on an expansive definition of 'crime' according to its 'invariable linkage' with punishment, . . . rather than specifically the conduct and mental state deemed illegal." *Id.* (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 478 (2000)). Therefore, there was sufficient evidence for a reasonable jury to convict Burgos-Montanez of Count Six.

## C. Courtroom Closure

The District Court properly denied Gutierrez-Calderon's motion for a new trial due to an alleged court closure. A motion for a new trial must be filed within fourteen days of the verdict or finding of guilt unless the reason for the motion is newly discovered evidence. Fed. R. Crim. P. 33(b)(1)–(2). Gutierrez-Calderon first raised the courtroom closure issue four months after the jury's verdict in a pro se motion; his counsel filed a motion for a new trial a month later. The motion was not based on newly discovered evidence, and thus, his claim is untimely.[4]

---

[4] Gutierrez-Calderon has been represented by two lawyers. The first tried the case and filed the opening brief, while the second filed the reply brief and argued the case. In

12

## D. DEA Expert

Quinones-Davila contends the District Court abused its discretion when it denied his motion to pre-authorize payment for a DEA expert; because of this, he argues he should be granted a new trial. In cases where the defendant is "financially unable to obtain investigative, expert, or other services necessary for adequate representation," he may request that the court authorize funding. 18 U.S.C. § 3006A(e)(1). The defendant must demonstrate with specificity why the expert is required. *See United States v. Gadison*, 8 F.3d 186, 191 (5th Cir. 1993); *United States v. Pitts*, 346 F. App'x. 839, 841–42 (3d Cir. 2009). Before authorizing the funds, the court must determine whether the "defendant *may have a plausible defense*." *United States v. Roman*, 121 F.3d 136, 143 (3d Cir. 1997) (citation omitted). The District Court did not abuse its discretion in denying Quinones-Davila's motion for a DEA expert.

On appeal, Quinones-Davila states a DEA expert would have effectively cross-examined agents and reviewed discovery materials to identify potential breaches of DEA policies, including the mishandling of confidential informants. However, when filing his motion before trial, Quinones-Davila did not provide these specific reasons. Instead, he asserted the DEA expert would interpret discovery and create cross examination questions. Because these reasons were not specific—and this Court reviews a district court's denial of an expert witness "in light of only the information available to the trial

---

the reply brief, Gutierrez-Calderon argues for the first time that his previous counsel was ineffective because he did not raise the courtroom closure issue when Gutierrez-Calderon told him about it at trial. Despite the change in attorneys, the ineffective assistance of counsel claim is forfeited. Gutierrez-Calderon's new counsel had the opportunity to file a substitute opening brief raising this issue. New counsel instead chose to adopt the opening brief on file. As the argument was not raised in the opening brief, it is forfeited. *See United States v. Kolodesh*, 787 F.3d 224, 230 n.3 (3d Cir. 2015).

court at the time it acted on the motion," *Gadison*, 8 F.3d at 191—the District Court did not abuse its discretion in denying Quinones-Davila's motion.

### E. Motion to Continue

Quinones-Davila argues that the District Court also abused its discretion by denying his motion to continue because he did not have enough time to study the first trial's transcript and the new discovery materials. When exercising its discretion to grant or deny a motion to continue, a court should consider: the efficient administration of criminal justice; the accused's rights, including the opportunity to prepare a defense; and the rights of other defendants who may be prejudiced by a continuance. *United States v. Kikumura*, 947 F.2d 72, 78 (3d Cir. 1991). A district court abuses its discretion when the denial of a continuance is "so arbitrary as to violate due process." *Id.* (citation omitted).

Here, after the first trial ended in a mistrial, the Government filed a second superseding indictment and sent new discovery materials to the Defendants. The first trial's discovery, evidence, and testimony put the Defendants on notice of the charges that would be in the second superseding indictment. Additionally, Quinones-Davila received daily transcripts of the four key witnesses' testimony during the first trial— meaning he had nearly ten months to review the key parts of the transcript—and he had over a month to investigate the new evidence in the last discovery batch. Thus, Quinones-Davila was afforded the opportunity to prepare a defense and the denial of the continuance was not "so arbitrary as to violate due process." *Kikumura*, 947 F.2d at 78.[5]

---

[5] Quinones-Davila argues the totality of the denial of his motions to hire a DEA expert and to continue rendered his trial fundamentally unfair, and he should be granted a new trial. Because the District Court did not abuse its discretion in denying either the motion to authorize a DEA expert or the motion to continue, it did not abuse its discretion in denying Quinones-Davila's motion for a new trial.

14

## F. Juror Errors

Jurors 5 and 12 were dismissed at two different points during trial after they separately expressed concern about whether their families would be safe if the Defendants were convicted. Hodge raises several issues with how the District Court handled these jurors, arguing he was denied his right to a fair and impartial jury. He only asserted one of these issues below, so we review the issues that were not raised for plain error. Fed R. Crim. P. 52(b). We review the issue that was raised below for abuse of discretion. *United States v. Bertoli*, 40 F.3d 1384, 1392–93 (3d Cir. 1994). Ultimately, Hodge is unsuccessful.

First, Hodge argues he was prejudiced because the District Court did not ask the remaining jurors whether they discussed retaliation if they were to find the Defendants guilty. Hodge raised this issue below, so we review it for abuse of discretion. Such discussions would have constituted premature deliberation and, therefore, juror misconduct. *See United States v. Resko*, 3 F.3d 684, 688–90 (3d Cir. 1993). But "[t]he more speculative or unsubstantiated the allegation of misconduct, the less the [district court's] burden to investigate." *Bertoli*, 40 F.3d at 1395 (citation omitted). Hodge's juror misconduct argument is entirely speculative, so the District Court had no burden to investigate. Juror 5's concern was triggered by her mother's comment that "so and so has a cousin that's in the thing that you're in," and Juror 5 was worried about retaliation because at least one Defendant knew her mother. JA 3898. On the other hand, Juror 12 indicated nothing happened to trigger his concern, like premature jury deliberations, and no one had contacted his family. The lack of similarities indicates the jury was not deliberating prematurely, so there was no reason to question the rest of the jury—and therefore the District Court did not abuse its discretion.

15

Second, Hodge argues the District Court erred by communicating ex parte with Juror 12 because the parties did not know the extent, if any, of premature jury deliberations. When Juror 12 was probed by the Court during the ex parte discussion, he implied he was not afraid due to external pressures. And the District Court provided a summary of the conversation with Juror 12 to the parties. When the District Court gave this summary, Hodge's counsel asked a question about whether Juror 12's family had been contacted. The District Court responded that it would ask the juror that question. When the Court spoke with Juror 12 again, it asked the question Hodge's counsel brought up—meaning, if counsel wanted the Court to inquire about potential premature jury deliberations as well, she could have asked the Court to discuss it with Juror 12. This was sufficient to resolve counsel's concerns of premature jury deliberation, and there was no plain error.

Third, Hodge argues the District Court erred by failing to instruct dismissed jurors to not discuss the case with third parties; he contends a third party could communicate information from the dismissed jurors to seated jurors and taint the jury. He also argues the District Court erred by not immediately warning Juror 12—after he expressed safety concerns, but before he was dismissed a week later—to refrain from discussing his concerns with the other jurors. Hodge points to no evidence that the lack of instruction actually tainted the jury. Thus, there is no plain error.

## G. Testimony from Personal Knowledge

Jean Carlos argues that DEA Officer Kalme—who translated during Jean Carlos's post-arrest interview—should not have been allowed to testify about the interview because he refreshed his recollection by reviewing the report of another agent who conducted the interview and took notes. A witness's testimony must be based on his

personal knowledge. Fed. R. Evid. 602. "Testimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about." *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990); *see also United States v. Gerard*, 507 F. App'x 218, 222 (3d Cir. 2012). A witness can testify from personal knowledge even if he refreshes his recollection with a report written by someone else. *United States v. Booz*, 451 F.2d 719, 724 (3d Cir. 1971). The District Court did not abuse its discretion by allowing Officer Kalme to testify. Kalme testified that the report was accurate: after he read it, it matched his recollection of the interview. Thus, a reasonable juror could conclude that Kalme was testifying from his personal knowledge rather than merely reciting the contents of the report.[6]

## H. Statutory Safety Valve Relief

The District Court did not clearly err when it held Anibal and Jean Carlos ineligible for statutory safety valve relief. To prevail on this claim, a defendant must, among other things, "truthfully provide[] to the Government all information and evidence [he] has concerning the offense." 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5). However, "the fact that the defendant has no relevant or useful information to provide . . . shall not preclude a determination by the court that the defendant has complied with this requirement." *Id.* While this Court reviews the ultimate safety valve determination de novo, we review the factual determination of whether a defendant

---

[6] Jean Carlos also argues there is a potential hearsay issue when a witness testifies about statements he heard through an interpreter. *See, e.g.*, *United States v. Nazemian*, 948 F.2d 522, 525–26 (9th Cir. 1991). However, unlike in *Nazemian* and Jean Carlos's other cases, Kalme understood Jean Carlos without translation, so these potential hearsay issues are not applicable.

17

satisfied the safety valve requirements for clear error. *United States v. Sabir*, 117 F.3d 750, 752 (3d Cir. 1997).

Anibal fails to show he met the statutory requirements of safety valve relief. Despite arguing he was innocent and had no information, his counsel later told the District Court that he may have information to share about his incarceration with the co-Defendants. But nine months passed between the first partial sentencing hearing and the second hearing, and no information was provided. Because Anibal's counsel informed the District Court that Anibal had information but it was never shared with the Government, Anibal does not qualify for safety valve relief.

Jean Carlos fails to show the District Court clearly erred in finding that he was not entirely truthful because his statements contradicted each other and the record. In his written proffer, Jean Carlos said he was not present when $500,000 was dumped into the ocean; in his post-arrest statements, he said he was there. Also, Jean Carlos and Schoenbohm's accounts differ on when Jean Carlos arrived in St. Croix in December 2014. Although Jean Carlos argues any errors were due to his imperfect memory, the contradictions support the finding that he was not fully truthful. Either way, Jean Carlos's failure to provide details and the Government's ability to identify why Jean Carlos was not completely forthcoming is sufficient to show that the District Court's factual finding was not clearly erroneous. *See United States v. Miranda-Santiago*, 96 F.3d 517, 529 (1st Cir. 1996) (requiring more than simple conclusory statements by the government that it did not believe the defendant).[7]

---

[7] Jean Carlos also argues the District Court erred in applying a two-point special skill enhancement. Because Jean Carlos is ineligible for safety valve relief—and the District Court sentenced him to the statutory mandatory minimum—removing the special skill enhancement would not lessen his sentence and any error was harmless.

## I. The Manager or Supervisor Enhancement

Gutierrez-Calderon argues the District Court clearly erred by applying the manager or supervisor enhancement to his sentence because he did not accompany Schoenbohm on any drug runs or give Schoenbohm money to buy drugs. The Sentencing Guidelines allow the judge to increase the offense "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). Applying this enhancement was not clear error.

To qualify for the enhancement, the court must find the defendant exercised control over another individual, there were multiple participants in the crime, and there was some differentiation in the participants' culpabilities and responsibilities. *United States v. Katora*, 981 F.2d 1398, 1405 (3d Cir. 1992). The word "control" is used "in a broad sense to mean [a] supervisory or organizational role . . . including recruitment." *United States v. Kamoga*, 177 F.3d 617, 621 (7th Cir. 1999) (citation omitted) (holding "control" encompasses indirect supervisory authority and a defendant does not need knowledge of all the other participants in a criminal activity). We review a district court's factual determinations, including a defendant's role in the offense under U.S.S.G. § 3B1.1, for clear error. *United States v. Raia*, 993 F.3d 185, 191 (3d Cir. 2021).

The evidence shows Gutierrez-Calderon exercised control over at least one other person by providing the necessary resources and arranging the payment to support criminal activity.[8] Gutierrez-Calderon stated he was going to pay for the Mako's storage,

---

[8] Gutierrez-Calderon cites *United States v. Badaracco*, 954 F.2d 928, 935 (3d Cir. 1992) for the proposition that "the government must prove by a preponderance of the evidence that the developers were criminally responsible participants if the upward adjustment is to stand." *Badaracco* does not apply. *Badaracco* is relevant only given that we recognize that there are multiple participants in the instant offense who are criminally responsible. *Id.* at 935. That is not the relevant issue here.

he coordinated payment for gas by sharing the necessary sender and receiver information, and he provided Schoenbohm with a gun. Thus, it was not clear error to conclude Gutierrez-Calderon acted as a manager or supervisor.

### J. Acceptance of Responsibility

The Sentencing Guidelines provide that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense," his sentence can be reduced by up to three levels. U.S.S.G. § 3E1.1. Quinones-Davila argues he is eligible for this reduction because he cooperated with the Government. But acceptance of responsibility generally does not apply when a defendant "puts the government to its burden of proof at trial by denying the essential factual elements of guilt." U.S.S.G. § 3E1.1, cmt. n.2.

Despite previous cooperation with the Government, Quinones-Davila did not accept responsibility for his actions. He challenged his factual guilt by moving for a judgment of acquittal and disputed the sufficiency of the Government's evidence and witnesses. Cooperating with the government is not the same as accepting responsibility and thus the District Court did not err when it denied Quinones-Davila's request for an acceptance of responsibility reduction.

### K. Drug Quantity Determination

Hodge argues the District Court erred when it used improper evidence to determine his drug quantity, and it should have waited to sentence him until the certified trial transcript was ready. At trial, the jury found that Hodge was responsible for five or more kilograms of cocaine; at sentencing, the District Court attributed 193.3 kilograms to Hodge. To determine this amount, the District Court listened to the Government's proffer and relied on its notes from trial to confirm the proffer's accuracy. "At sentencing, 'the government bears the burden of proving drug quantity by a preponderance of the

20

evidence.'" *United States v. Douglas*, 885 F.3d 145, 150 (3d Cir. 2018) (quoting *United States v. Paulino*, 996 F.2d 1541, 1545 (3d Cir. 1993)) (internal alterations omitted). The district court must "satisfy itself that the evidentiary basis for its estimate has sufficient indicia of reliability." *Id.* at 151. This "indicia of reliability" can be found from corroboration or consistency with other evidence. *Id.* The Government met its burden of proving drug quantity by a preponderance of the evidence, and the District Court's reliance on its notes to corroborate the evidence was proper.[9]

To support its argument for Hodge's drug quantity, the Government reminded the District Court about testimony from a chemist and Schoenbohm. Because the Court was present during trial, it could rely on its own recollection and notes to ensure this testimony, among other evidence presented by the Government, was reliable for sentencing purposes. There was no need for the District Court to wait until the trial transcript was ready because the evidence used to estimate Hodge's drug quantity was sufficiently reliable. *See Paulino*, 996 F.2d at 1548 (determining that an agent's recital of events from a discussion with a confidential informant met the sufficient indicia of reliability standard).

## II.

For the foregoing reasons, we will affirm the District Court.

---

[9] From his briefing, Hodge implies that he did not have sufficient notice under Fed. R. Crim. P. 32 because the sentencing judge relied on the Government's proffer as opposed to "sufficient evidence." This, he argues, did not allow him to properly challenge the basis of calculations of drug quantity. First, Hodges conflates arguments under Rule 32 and sufficient indicia of reliability. Second, the District Court presented evidence heard at trial when Hodge was present. This does not implicate the same "surprise" concerns underlying the notice requirement embedded in Rule 32(i)(1)(C).